[No. B195282. Second Dist., Div. Seven. Mar. 5, 2007.]

BRIDGET A. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES et al., Real Parties in Interest.

286

292

## COUNSEL

Martha A. Matthews for Petitioners Bridget A. and Christopher A.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel for Real Party Interest Los Angeles County Department of Children and Family Services.

Jenny Cheung for Real Party in Interest Marilyn A.

Cameryn Schmidt and Carol B. Gasa-Kittler for Real Parties in Interest Joseph and Xochitl E.

## OPINION

**PERLUSS, P. J.**—Absent extraordinary circumstances, at the 18-month permanency review hearing held pursuant to Welfare and Institutions Code section 366.22[1] the juvenile court either orders the return of a dependent child to parental custody or terminates reunification services and sets a hearing for the selection and implementation of a permanent plan pursuant to section 366.26. (§ 366.22, subd. (a); Cal. Rules of Court, rule 5.720(c)(1) & (3);[2] see *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788 [42 Cal.Rptr.2d 200].) If the juvenile court determines there would be no substantial danger to the child if he or she were returned home provided there is continued supervision by a social worker and the ongoing provision of reasonable support services to preserve the family, is such supervised return an option available to the court? Or are the only alternatives returning the child and terminating dependency jurisdiction, on the one hand, or terminating reunification services and setting a section 366.26 hearing, on the other hand?

In this case the Los Angeles County Department of Children and Family Services (Department) recommended at Bridget and Christopher A.'s 18-month hearing that the two children and their three siblings be returned to their mother, Xochitl C., but that the juvenile court retain jurisdiction and family maintenance services be provided to ensure the children's safety. The juvenile court rejected the Department's recommendation, stating it had no statutory authority to order the children returned home without also terminating its jurisdiction. Following entry of the court's order returning the children to their mother and terminating its jurisdiction, Bridget and Christopher, who had objected to the juvenile court's refusal to consider the Department's proposed "middle option," petitioned this court for a writ of mandate directing the juvenile court to vacate its order terminating jurisdiction and to issue a new order setting a hearing pursuant to section 364 to determine whether continued court supervision is necessary to ensure their safety in the home of their mother.

We grant the requested relief. In determining whether to return a dependent child in an out-of-home placement to the custody of his or her parent at the six-month review hearing (§ 366.21, subd. (e)), the juvenile court properly considers if providing family maintenance services to the child and parent will facilitate the child's return to, and safe maintenance in, the home. Although the juvenile court in this case correctly observed there is no express

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] All references to rule or rules are to the California Rules of Court.

authority in either statute or rule for a similar order returning the child to his or her parent's custody and ordering family maintenance services at the 12-month (§ 366.21, subd. (f)) or 18-month (§ 366.22) permanency review hearings, neither is there anything in the statutory scheme, including in section 364, that precludes the court in an appropriate circumstance from entering such an order at those hearings. In fact, this "middle option" appears to have been contemplated by the Legislature, as reflected in section 361.5, subdivision (a), and is fully consistent not only with the broad-ranging authority of the juvenile court to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child" (§ 362, subd. (a)), but also with the fundamental policies underlying the dependency system.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Original Dependency Petition*

Bridget (now 14 years old) and Christopher (now 13 years old) and their three siblings were initially named in a dependency petition filed on April 22, 2004 by the Department pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect) and (j) (abuse of sibling). The petition, as amended and sustained on June 7, 2004, alleged Antonio E., Bridget and Christopher's stepfather, physically abused Christopher and two of his siblings (Joseph E. and Xochitl E.) and their mother, Xochitl C., failed to take appropriate action to protect her children, thereby placing all five children at risk; Xochitl C. herself physically abused Joseph E. and Marilyn A., placing not only those two children but also their siblings at risk; Antonio E. and Xochitl C. have a history of domestic violence in which they have assaulted each other in the children's presence; Antonio E. has a history of substance abuse and drug-related criminal activity and is a current user of alcohol and illicit drugs, which renders him incapable of providing regular care for the children; and Xochitl C. knew of Antonio E.'s substance abuse problem and failed to take appropriate action to protect the children.[3] The children were placed with their maternal grandmother, who came to live with the children in the family home. (Because the maternal grandmother's own home was too small to accommodate all the children, she moved into the family home to care for them; Antonio E. and Xochitl C. moved out of the home.)

---

[3] At the time of the original section 300 petition, Christian A., the biological father of Marilyn, Bridget and Christopher, was identified as "whereabouts unknown." In subsequent filings the Department reported Christian A. was incarcerated at the United States Penitentiary in Lompoc.

In connection with the 12-month review hearing held on June 6, 2005 (§ 366.21, subd. (f)), the Department reported Xochitl C. and Antonio E. had complied with the case plan requirements concerning parenting and domestic violence classes, counseling, alcohol and drug abstinence and visitation and recommended they be allowed to return to the family home. The court agreed and entered home-of-parent orders for the children to be returned to the physical custody of Xochitl C. and Antonio E. under the continued supervision of the Department. The court scheduled a section 364 review hearing for December 5, 2005.

### 2. The Subsequent Petition

On November 18, 2005 the Department filed a subsequent petition (§ 342); and the children were again detained (and placed with their maternal grandmother in the family home with their parents required to leave) based on an allegation Xochitl C. had threatened Antonio E. with a loaded gun in the children's presence because she was afraid he was molesting their six-year-old daughter, Xochitl E. Christopher had attempted to separate his mother and Antonio E. by stepping between the two of them; he managed to take the gun from his mother.

On January 26, 2006 the court sustained portions of the supplemental petition, terminated its prior home-of-parent orders, ordered the children suitably placed with Department discretion to place them with any appropriate relative except the parents and directed the Department to provide only six additional months of family reunification services to Xochitl C. and Antonio E., who were allowed monitored visitation with the children and ordered to participate in counseling and to complete a 52-week domestic violence program.

### 3. The Review Hearing

In connection with the review hearing on July 27, 2006 (held pursuant to § 366.22 on the original petition and § 366.21, subd. (e), on the supplemental petition), the Department reported both parents were visiting the children consistently and had enrolled, albeit belatedly, in the required domestic violence program. No conjoint counseling had been initiated. The Department also reported Bridget and Christopher's visits with Xochitl C. were going well and both children wanted to return to their mother's care. The Department recommended termination of family reunification services because the parents

had received the maximum amount (18 months) of services permitted by statute and had made only limited progress on the case plan. Because of notice issues, the court continued the review hearing to September 6, 2006. The Department's addendum report for the September 6, 2006 review hearing stated Xochitl C. was making good progress in the domestic violence program but, due to problems with scheduling and costs, the parents and children still were not participating in conjoint counseling. The Department again recommended termination of family reunification services, but also recommended Xochitl C. be permitted to have unmonitored visits with the children in the family home. The court granted unmonitored visits to Xochitl C. on condition Antonio E. not be present during the visits.

The review hearing was continued two more times, first to October 6, 2006, and then to November 6, 2006 for a contested hearing. An addendum report for the November 6, 2006 hearing states Xochitl C. was having unmonitored visits with the children, including overnight and weekend visits, that were going well with no concerns. Xochitl C. was making good progress in the domestic violence program (although Antonio E. had stopped attending), and the family was participating in conjoint counseling. The Department's report indicates the caseworker had discussed with Xochitl C. the possibility of her returning to the family home. The Department assessed the risk if this were to be allowed as "moderate," and stated the risk would be reduced further if mother continued to attend her counseling and domestic violence programs. Accordingly, the Department recommended the court enter a home-of-parent-mother order (that is, that the court allow the mother to live in the family home with the children, who were already there with their maternal grandmother) and order family maintenance services for Xochitl C. and the children. The Department continued to recommend termination of family reunification services and monitored visitation for Antonio E.

### 4. The Court's Order Terminating Jurisdiction

At the outset of the contested review hearing on November 6, 2006, counsel for the Department stated, "The Department is recommending home of parent mother on the condition that the mother move into the home where the children are currently residing, and the Department is recommending family maintenance services." In response, the court indicated its intention to return the children to the custody of their mother and terminate its jurisdiction without providing additional services. Following a recess, counsel for the Department repeated the Department's recommendation for a home-of-parent-mother order with family maintenance services, but added, "if the court will not order home of parent mother, without the Department submitting on the issue of terminating jurisdiction, I will submit on that issue."

Counsel for Bridget and Christopher immediately objected to termination of dependency jurisdiction if the children were sent home. The court then asked if Xochitl C. had completed all requirements of the case plan. When counsel for the Department indicated she had made significant progress but had not yet completed the 52-week domestic violence course, the court suggested it might not allow the children to return home. Counsel for the Department urged the court to find there had been substantial compliance by Xochitl C. and repeated her client's position, "I have made my argument for [family maintenance services], but not to the point where I don't want the children returned home of the parent mother. I will then submit on the issue of the termination of jurisdiction. If that's the only way the court will order home of parent mother, that's the Department's position."

Before entering its orders, the court observed, "It's not a 364. It's not a [361.2]. It doesn't fall under any of those code sections. There is no code section controlling this thing. There is a 'maybe' in the rules of court, but it's not controlled by anything else. I am not keeping these cases." The court then terminated its prior suitable placement orders, dated January 26, 2006, as to all five children; ordered each of the children placed in the home of the mother; granted legal custody of the children to Xochitl C. and Antonio E. with sole physical custody and primary residence with Xochitl C.; and terminated its jurisdiction over the children, noting the objections of the Department and the children's counsel to the termination order.

### 5. *Bridget and Christopher's Petition for Writ of Mandate*

Following entry of the court's order terminating juvenile court jurisdiction, Bridget and Christopher petitioned this court for a writ of mandate directing the juvenile court to vacate that portion of its November 6, 2006 order terminating jurisdiction over them and to issue a new order setting a hearing pursuant to section 364 to determine whether continued court supervision is necessary to ensure their safety in the home of their mother.[4] The petition was supported in part by declarations from two attorneys with the Children's Law Center of Los Angeles who appear before and are familiar with the procedures and practices in department 416 (Commissioner Albert Garcia) of the Los Angeles Superior Court in which Bridget and Christopher's dependency case was pending. Both attorneys declared Commissioner Garcia has stated on numerous occasions he has no authority to continue dependency

---

[4] Although the order terminating jurisdiction is appealable (§ 395 [order entered after disposition hearing is appealable as an order after judgment]; see, e.g., *In re Natasha A.* (1996) 42 Cal.App.4th 28, 33–34 [49 Cal.Rptr.2d 332]), Bridget and Christopher allege there is a substantial risk they could suffer serious physical abuse or emotional trauma absent court supervision and Department involvement during the time it would take to resolve an appeal.

jurisdiction or to set a section 364 review hearing after he has made an order returning children to the custody of a parent or guardian. Accordingly, when the Department recommends a home-of-parent order and provision of family maintenance services for a child in an out-of-home placement, as it did in this case, Commissioner Garcia will either continue the out-of-home placement or return the child to his or her parents and immediately terminate the juvenile court's jurisdiction.

The Department joined in Bridget and Christopher's petition. Counsel for Bridget and Christopher's three siblings have also filed "joinders" in the petition.[5] On December 7, 2006 we issued an order to show cause why the requested relief should not be granted. No return or other response has been filed by any real party in interest.

## DISCUSSION

### 1. *Standard of Review*

We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or "exit") order pursuant to section 362.4 for abuse of discretion (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706]) and may not disturb the order unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' " (*Ibid.*; see *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4 [5 Cal.Rptr.3d 261]; *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1501–1502 [285 Cal.Rptr. 374],

---

[5] The documents filed on behalf of Bridget and Christopher's siblings, although denominated as "joinders," are in the form of statements of support for the positions asserted and relief requested by Bridget and Christopher rather than separate petitions to review the juvenile court's order terminating jurisdiction over them. (See rule 8.490(b) & (c) [detailing requirements for a petition for writ of mandate, certiorari or prohibition]; cf. *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1391 [129 Cal.Rptr.2d 892] [although "standard practice" permits parties to join in each other's arguments, "joining in an argument is different from joining in a motion"; absent compliance with procedural requirements for a properly filed motion, party "joining" other party's motion lacks standing to seek relief from the court].) Nonetheless, in response to a question from the court at oral argument, counsel for Bridget and Christopher stated it was her understanding the siblings had intended to seek affirmative relief from this court. That position was confirmed by counsel for Joseph and Xochitl E. in a letter submitted after argument. However, counsel for Marilyn A. expressly disclaimed any intent to seek writ relief for her client. Accordingly, although it is far better practice in these circumstances for counsel to file a document that not only properly identifies itself as a petition but also complies with the applicable requirements of the California Rules of Court for a writ petition, we will exercise our discretion and treat the joinder by Joseph and Xochitl E. in this matter as, in effect, a supplemental petition for writ of mandate.

disapproved on another ground in *In re Chantal S.* (1996) 13 Cal.4th 196, 204 [51 Cal.Rptr.2d 866, 913 P.2d 1075].) However, the sole question presented by Bridget and Christopher's writ petition—does the juvenile court at a section 366.22, 18-month review hearing have the authority to return a dependent child to the home of his or her parent while providing family maintenance services under court supervision—concerns the scope of the juvenile court's discretion, not the proper exercise of that discretion in a particular case, and thus is a question of law for this court. (See *Choice-In-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303] ["The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion."].)

■ To answer this question we must construe and harmonize several related provisions of the Welfare and Institutions Code and the California Rules of Court governing dependency review hearings. In approaching this task we are guided by well-established principles of statutory interpretation: The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*In re Eric H.* (1974) 54 Cal.App.4th 955, 965 [63 Cal.Rptr.2d 230]; *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1162 [111 Cal.Rptr.2d 310].) "[T]o determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420]; see *People v. Broughton* (2003) 107 Cal.App.4th 307, 316–317 [133 Cal.Rptr.2d 161].) "If statutory language is susceptible to more than one interpretation, courts must adopt the meaning that conforms to the spirit of the statutory scheme and reject that which would result in absurd consequences unintended by the Legislature. In applying these principles, courts must keep in mind the object to be achieved, and the evil to be prevented, by the legislation." (*In re Christina A.*, at p. 1162.)

■ The Legislature has unequivocally declared the purpose of dependency law is "to provide for the protection and safety of . . . each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody

of his or her parents only when necessary for his or her welfare . . . . When removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. . . ." (§ 202, subd. (a); see *In re Christina A., supra*, 91 Cal.App.4th at p. 1162.) The Legislature has further instructed that the provisions of the Welfare and Institutions Code shall be "liberally construed" to carry out that purpose. (§ 202, subd. (a).)

## 2. *The Statutes Governing Dependency Review Hearings*

■ "California has a comprehensive statutory scheme establishing procedures for the juvenile court to follow when and after a child is removed from the home for the child's welfare. [Citations.] 'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' [Citation.] When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family. [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52 [1 Cal.Rptr.3d 432, 71 P.3d 787]; see *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1008 [32 Cal.Rptr.3d 89, 116 P.3d 550].) Under the current statutory scheme dependency proceedings in which a child is removed from his or her home typically involve four phases: jurisdiction, disposition, reunification and implementation of a permanent plan if reunification is unsuccessful. (See generally *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247–250 [19 Cal.Rptr.2d 698, 851 P.2d 1307]; *In re Summer H.* (2006) 139 Cal.App.4th 1315, 1324 [43 Cal.Rptr.3d 682].)

■ After the juvenile court has assumed jurisdiction under section 355 by finding the child is a person described by section 300, the court is required to hear evidence on the question of the proper disposition to be made of the child. (§ 358, subd. (a).) In most cases at the disposition hearing the court determines what services the child and the family need to be reunited and free of court supervision. The court may enter an order ranging from dismissal of the petition (§ 390; rule 5.695(a)(1)) to declaring dependency, removing physical custody from the parents and making a general placement order for the child (§ 361; rule 5.695(a)(7)). If appropriate, the court may declare the child a dependent and, without removing the child from his or her home, order family maintenance services to ameliorate the conditions that made the child subject to the court's jurisdiction. (§ 362, subd. (a); rule 5.695(a)(5).) ■ Alternatively, if the court determines by clear and convincing evidence there is a substantial danger to the physical health,

safety, protection or physical or emotional well-being of the child if the child remains in his or her home and there is no other reasonable means to protect the child (§ 361, subd. (c)(1)–(4); rule 5.695(d) [removal of custody—required findings]), in the absence of a noncustodial parent who desires custody (see § 361.2), the child must be removed from the physical custody of his or her parents and placed "under the supervision of the [county] social worker who may place the child" in an appropriate home. (§ 361.2, subd. (e).)

■ Whether or not the dependent child remains in the parent's home, however, child welfare services (either in the form of family reunification services for a child in an out-of-home placement[6] or family maintenance services for a child who remains at home[7]) must be provided to the parent unless the court finds by clear and convincing evidence that one of the 15 exceptions set forth in section 361.5, subdivision (b), applies. (§§ 361.5, subd. (a), 362, subd. (b); *Rosa S. v. Superior Court* (2002) 100 Cal.App.4th 1181, 1188 [122 Cal.Rptr.2d 866]; *In re Joel T.* (1999) 70 Cal.App.4th 263, 267 [82 Cal.Rptr.2d 538].)

### a. *The six-month hearing*

■ If a child has been declared a dependent of the juvenile court and placed under court supervision, the status of the child must be reviewed every six months. (*In re N. S.* (2002) 97 Cal.App.4th 167, 171 [118 Cal.Rptr.2d 259] ["In any matter in which a minor has been declared a dependent, the court must hold review hearings."]; *In re Natasha A.* (1996) 42 Cal.App.4th 28, 38 [49 Cal.Rptr.2d 332] ["As long as a minor remains a dependent of the juvenile court, the court is statutorily required to hold review hearings every six months."].) That initial six-month review hearing will be held under either section 364 for a child who remains with his or her parent or guardian or section 366.21, subdivision (e), for a child in an out-of-home placement.

### i. *Section 364 review hearing*

■ If the child has not been removed from the physical custody of his or her parent, the court must schedule a review hearing pursuant to section 364 to be held within six months of the date of the declaration of dependency and

---

[6] "Family reunification services" are "activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and needs temporary foster care, while services are provided to reunite the family." (§ 16501, subd. (h).)

[7] "Family maintenance services" are "activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (§ 16501, subd. (g).)

every six months thereafter. (§ 364, subds. (a), (d);[8] rule 5.710(a)(2); *In re N. S., supra,* 97 Cal.App.4th at p. 171; *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450 [45 Cal.Rptr.3d 445] *(Janee W.)*; see *In re Nicholas H., supra,* 112 Cal.App.4th at pp. 263, 264.) At the hearing the issue before the court is "whether continued supervision is necessary." (§ 364, subd. (c);[9] *In re Natasha A., supra,* 42 Cal.App.4th at p. 35; *In re N. S.,* at p. 172.) Termination of dependency jurisdiction is required unless the Department establishes the conditions still exist that would justify the court taking jurisdiction of the child or such conditions would exist if jurisdiction were terminated. (§ 364, subd. (c); see *In re N. S.,* at p. 173; *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2006) 145 Cal.App.4th 692, 700 [51 Cal.Rptr.3d 816]; rule 5.710(e)(1).) If dependency jurisdiction is continued, the court must order continued services and set a further review hearing pursuant to section 364 to be held within six months. (Rule 5.710(e)(2).) This review process is repeated until the court terminates jurisdiction. (§ 364, subd. (d); rule 5.710(a)(2).)[10]

### ii. *Section 366.21, subdivision (e), review hearing*

■ If the child has been removed from parental custody and remains out of custody, the court must schedule a hearing pursuant to section 366.21, subdivision (e), to be held within six months after the date the child entered

---

[8] Section 364, subdivision (a), provides, "Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing. . . . Section 364, subdivision (d), provides, "If the court retains jurisdiction [at the hearing held pursuant to this section,] it shall continue the matter to a specified date, not more than six months from the time of the hearing, at which point the court shall again follow the procedure specified in subdivision (c)."

[9] Section 364, subdivision (c), provides, "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."

[10] "[N]othing in the statutes or rules limits the time period for court supervision and services when the child remains in the home . . . . If supervision is no longer required, the court simply terminates the dependency. Otherwise, the state may continue to provide supportive services and supervision to parents until the dependent minors reach their majority." (*In re Joel T., supra,* 70 Cal.App.4th at pp. 267–268, citations and fn. omitted; see § 16506 [family maintenance services "may be extended in periods of six-month increments if it can be shown that the objectives of the service plan can be achieved within the extended time periods . . . ."].)

foster care.[11] (Rule 5.710(a)(1); see *In re Christina A., supra,* 91 Cal.App.4th at pp. 1163–1165 [six-month review hearing for child in out-of-home placement must be held within six months from date of entry into foster care notwithstanding language in § 366.21, subd. (e), stating hearing to be held six months from date of disposition hearing].)

The initial task for the court at the six-month review hearing is to determine whether the child should be returned to the custody of his or her parent or guardian. There is a statutory presumption the child will be returned to parental custody unless the court finds the child's return would create "a substantial risk of detriment to the physical or emotional well-being" of the child. (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 249.) "At the review hearing held six months after the initial dispositional hearing, the court shall order the return of the child to the physical custody of his or her parent . . . unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent . . . would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e).) In making this determination, the court is to "consider the efforts or progress . . . demonstrated by the parent . . . and the extent to which he or she availed himself or herself [of] services provided." (*Ibid.*) The parent's failure "to participate regularly and make substantive progress in court-ordered treatment programs" is "prima facie evidence that return would be detrimental." (*Ibid.*)[12]

At this hearing the court must also determine whether reasonable reunification services have been offered or provided and evaluate the child's case plan and plan for permanent placement. (See rule 5.710(e)(2)–(7).) If the child is not returned home, the court continues or modifies the reunification services being provided (rule 5.710(f)(11)) and schedules the 12-month permanency hearing pursuant to section 366.21, subdivision (f).[13]

---

[11] Section 361.5, subdivision (a), and rule 5.502(9)(A) define the date the child entered foster care in dependency proceedings as the earlier of the dates on which the court sustained the section 300 petition or 60 days after the child's initial removal from the physical custody of his parent or guardian. (See *In re Christina A., supra,* 91 Cal.App.4th at p. 1160.)

[12] The question whether to return the child to parental custody properly focuses on the well-being of the child at the time of the review hearing: "[P]lacement must continue regardless of whether that detriment mirrors the harm which had required the child's removal from parental custody." (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 900 [49 Cal.Rptr.2d 900].)

[13] Different rules apply at the six-month hearing stage if the dependent child was under the age of three on the date of the initial removal: "If . . . the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 [to terminate parental rights] within 120 days." (§ 366.21, subd. (e); rule 5.710(f)(1); see *Jessica A. v. Superior Court* (2004) 124 Cal.App.4th 636, 642 [21 Cal.Rptr.3d 488].) Section 366.21, subdivision (e), further provides, "If, however, the court finds there is a substantial

### b. *The 12-month hearing*

At the section 366.21, subdivision (f), permanency review hearing, to be held within 12 months from the date the child enters foster care, the court again determines whether the child should be returned to the custody of his or her parent or guardian; and the same statutory presumption that the child will be returned home applies. (§ 366.21, subd. (f); *Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 249.) If the child is not returned to his or her parent because the juvenile court finds a substantial risk of detriment to the child exists, the court must terminate reunification services and facilitate the alternative permanent plan (generally by setting a hearing for the selection and implementation of a permanent plan pursuant to section 366.26) unless reasonable services have not been offered or provided or there is a substantial probability of return of the child within 18 months from the date of the child's removal from his or her home. (Rule 5.715(3); *Cynthia D.,* at p. 249 ["At the 12-month review, if the court does not return the child and finds that there is no substantial probability of return to the parent within 18 months of the original removal order, the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 . . ."].)

If the court finds there is a substantial probability the child could be safely returned to the custody of his or her parent with additional reunification services, the court may extend the reunification period to a maximum of 18 months from the date of the original removal order (§§ 361.5, subd. (a)(3), 3rd par., 366.21, subd. (g)(1); *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 596 [30 Cal.Rptr.3d 320]) and set a further permanency review hearing pursuant to section 366.22. (Rules 5.715(d)(1), 5.720(a) [§ 366.22 permanency review hearing "must be held no later than 18 months from the date of the initial removal"].)

### c. *The 18-month hearing*

At the 18-month permanency review hearing the juvenile court either orders the return of a dependent child to parental custody or terminates reunification services and sets a hearing for the selection and implementation of a permanent plan pursuant to section 366.26.[14] (§ 366.22, subd. (a); rule 5.720(c)(1) & (3).) "Absent extraordinary circumstances, the 18-month

---

probability that the child, who was under the age of three years on the date of initial removal . . . may be returned to his or her parent . . . within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing." (See *Jessica A.,* at pp. 642, 644–645.)

[14] The juvenile court need not schedule a section 366.26 hearing if it finds by clear and convincing evidence the child is not a proper subject for adoption and there is no one willing to accept legal guardianship. (§ 366.22, subd. (a); rule 5.720(c)(3)(A).)

review hearing constitutes a critical juncture at which 'the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children.' [Citations.]" (*Katie V. v. Superior Court, supra,* 130 Cal.App.4th at p. 596; see *In re Elizabeth R., supra,* 35 Cal.App.4th at p. 1788 ["The Legislature has determined that the juvenile court must embrace or forsake family preservation at this point by circumscribing the court's options."].)

 As was true at the six-month and 12-month review hearings, unless the court finds by a preponderance of the evidence that returning the child to the physical custody of his or her parents would create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being, the court must order the child returned. (§ 366.22, subd. (a); rule 5.720(c)(1).) "If the child is not returned to a parent or legal guardian at the [18-month] permanency review hearing, the court shall order that a hearing be held pursuant to Section 366.26 in order to determine whether adoption, guardianship, or long-term foster care is the most appropriate plan for the child. . . . The court shall also order termination of reunification services to the parent or legal guardian." (§ 366.22, subd. (a).) A finding of reasonable services offered or provided is not a precondition to ordering a section 366.26 hearing. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1017, fn. 10 [70 Cal.Rptr.2d 603].)

### 3. *The Juvenile Court May Order a Dependent Child Home at the Six-month Review Hearing While Continuing Court Supervision and Services*

 The fundamental question to be addressed at the six-month, 12-month and 18-month review hearings is whether the dependent child can be returned safely to the physical custody of his or her parent. At least in the context of the section 366.21, subdivision (e), six-month review hearing, there is no doubt that in answering that question the juvenile court properly considers whether continuing dependency jurisdiction and providing additional family maintenance services to the parent and child will facilitate the child's return to, and safe maintenance in, the home: "If the child is returned [at the six-month review hearing], the court may order the termination of dependency jurisdiction or order continued dependency services and set a review hearing within 6 months." (Rule 5.710(e)(2); see Cal. Judges Benchguide 103: Juvenile Dependency Review Hearings (CJER rev. 2005) § 103.33, p. 103-44 [at the six-month review hearing, "[i]f the child has been removed, the court may . . . [r]eturn the child and continue dependency with services to the child and family [citations]."].)

■ To be sure, as the juvenile court observed in this proceeding, no language in section 366.21, subdivision (e), itself specifically sanctions continuing dependency jurisdiction and providing family maintenance services when a child in out-of-home placement is returned to his or her parent at the six-month review hearing. (The statute similarly makes no mention of terminating jurisdiction upon the return of the child to the physical custody of his or her parent.) However, the Judicial Council's interpretation of this statute in rule 5.710 (former rule 1460), quoted above, expressly authorizes continuing court supervision and ordering family maintenance services. "[A]lthough not binding on the courts and invalid if contrary to statute, [a Judicial Council rule interpreting the dependency statutes] is entitled to great weight and will be overturned only if it is clearly erroneous." (*Sara M. v. Superior Court, supra,* 36 Cal.4th at p. 1014 [upholding portion of former rule 1460(f)(1)(B) authorizing the juvenile court to terminate reunification services and set the matter for a permanency planning hearing whenever it finds by clear and convincing evidence the parent has failed to contact and visit the child for six months after reunification services have begun]; see *In re Alanna A.* (2005) 135 Cal.App.4th 555, 564–565 [37 Cal.Rptr.3d 579] [approving interpretation of § 366.21, subd. (e), in rule 5.710(f)(11)].)

Significantly, nothing in section 366.21, subdivision (e), or elsewhere in the statutes governing the dependency court's conduct of review hearings prohibits the court from returning the child to his or her parent and continuing court supervision with family maintenance services. Indeed, section 361.5, subdivision (a)(3), fourth paragraph, provides in part, "Physical custody of the child by the parents or guardians during the applicable time period under paragraph (1), (2), or (3) [specifying the duration of court-ordered family reunification services that may be provided to a child and his or her family] shall not serve to interrupt the running of the period." By precluding any "tolling" of the maximum period for family reunification services for the time a child has been returned home and family maintenance services are provided, the Legislature has plainly expressed both its awareness and approval of the widespread practice of returning a child in an out-of-home placement to the physical custody of his or her parent subject to on-going court supervision and the provision of family maintenance services. It has also recognized the unfortunate reality that—as happened in this case[15]—the parent may subsequently lose custody of the child once again following the filing of a supplemental (§ 387) or subsequent (§ 342) petition. (§ 364, subd. (e); see,

---

[15] At the 12-month hearing held on June 6, 2005, after finding Xochitl C. and Antonio E. in compliance with their case plans, the juvenile court returned all five children to their physical custody, retained jurisdiction and ordered family maintenance services and set a further review hearing pursuant to section 364 for December 2005. The Department filed its subsequent petition pursuant to section 342 and re-detained the children prior to the date of the section 364 hearing.

e.g., *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 166 [48 Cal.Rptr.2d 669], fns. omitted ["When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to ' "square one" ' with regard to reunification efforts. [Citation.] Instead, the question becomes whether reunification efforts should resume. . . . [T]he court determines at what chronological stage of the 12- to 18-month period the case is for reunification purposes and then proceeds pursuant to section 366.21 or section 366.22 as appropriate."]; *In re N. M.* (2003) 108 Cal.App.4th 845, 854 [134 Cal.Rptr.2d 187].)

██ Moreover, when a child has been declared a dependent of the juvenile court, the court is expressly authorized to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a); see also § 245.5 ["In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of . . . the minor. These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor . . . ."].) Permitting a dependent child to return home while retaining jurisdiction and ordering the continuation (with or without modification) of services previously provided to ensure the child's safety plainly fall within this broad-ranging authority of the juvenile court. (*In re Carmen M.* (2006) 141 Cal.App.4th 478, 486 [46 Cal.Rptr.3d 117] [§ 362, subd. (a), and related provisions of juvenile law have been broadly interpreted to authorize wide variety of remedial orders intended to protect the safety and well-being of dependent children]; see *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103–1104 [254 Cal.Rptr. 364] [juvenile court has broad discretion to determine what would best serve dependent child's interests and enter appropriate orders to protect the child].)

Sound public policy further supports permitting the juvenile court to enter a home-of-parent order at the six-month review hearing while retaining jurisdiction and ordering family maintenance services. The Legislature has directed the juvenile court "to preserve and strengthen the minor's family ties whenever possible." (§ 202, subd. (a).) Even after making the required findings and declaring a child a dependent of the juvenile court, a child may not be removed from the custody of his or her parent or guardian absent proof the child cannot be adequately protected by providing reasonable in-home services. (§ 361, subd. (c); rule 5.695(d).) Once it becomes apparent a child initially in an out-of-home placement can safely return home if family maintenance services are made available, ordering that return, while continuing jurisdiction, furthers the legislative mandate to preserve the family whenever possible. (See § 202, subd. (a) [when removal of a child is

necessary, "reunification of the minor with his or her family shall be a primary objective" of the juvenile court].)

### 4. The Juvenile Court May Order a Dependent Child Home at the 12-month Review Hearing While Continuing Court Supervision

■■■ The language in section 366.21, subdivision (f), directing the court to return a dependent child to the physical custody of his or her parent or guardian unless that return would create a substantial risk of detriment to the safety or physical or emotional well-being of the child is identical to the language in section 366.21, subdivision (e). Accordingly, although rule 5.715 prescribing the conduct of the 12-month permanency hearing does not address the court's ability to return the child to his or her home and order continued dependency services, as does rule 5.710(e)(2) with respect to the six-month hearing, there is no reason to conclude the juvenile court does not have full authority under section 362, subdivision (a), as well as sections 202, subdivision (a) (declaring purpose of juvenile law), and 245.5 (general powers of juvenile court), to enter a home-of-parent order at the 12-month hearing, continue court jurisdiction and direct that family maintenance services be provided to the child and his or her parents. (See Cal. Judges Benchguide 103: Juvenile Dependency Review Hearings, *supra*, § 103.13, p. 103-26 [identifying among possible findings and orders at 12-month permanency hearing, "[c]hild is returned home and dependency continued/not continued. [Citation.] If dependency is continued, court sets review in six months."].) As discussed, the Legislature certainly contemplated such an order with the anti-tolling provision in section 361.5, subdivision (a)(3), fourth paragraph, which applies when a child is initially removed, returned home at a periodic review hearing and then re-detained based on the allegations in a supplemental petition. (See, e.g., *Carolyn R. v. Superior Court, supra*, 41 Cal.App.4th at p. 166.)

At the 12-month permanency review hearing, if the dependent child is not returned to the custody of his or her parent or guardian, the court is authorized to order additional reunification services if it finds a substantial probability the child will be returned and safely maintained in the home within the extended period (not to exceed 18 months from the date of the original removal). (§§ 366.21, subd. (g), 361.5, subd. (a)(3), 3rd par.) Particularly in light of the legislative directive that family preservation be a primary objective of the dependency system during these initial phases of the proceedings (see *Cynthia D. v. Superior Court, supra*, 5 Cal.4th at pp. 248–249; *In re Celine R., supra*, 31 Cal.4th at p. 52), it would be anomalous at best to construe section 366.21, subdivision (f), to permit the court to maintain the child in an out-of-home placement while ordering additional reunification services but not to allow the court to return the child

to his or her parent while providing continued court and social worker supervision and child welfare (family maintenance) services to ensure the child's safety. We decline to adopt such an incongruous interpretation of the statutory scheme.

> 5. *The Juvenile Court Has Discretion to Enter a Home-of-parent Order at the 18-month Permanency Review Hearing While Continuing Court Supervision and Services*

 Section 366.22, subdivision (a), like section 366.21, subdivisions (e) and (f), contains a statutory presumption the child will be returned to parental custody unless the court finds the child's return would create "a substantial risk of detriment to the physical or emotional well-being" of the child. (*Cynthia D. v. Superior Court, supra*, 5 Cal.4th at p. 249 [discussing review hearings under all three provisions].) Also like section 366.21, subdivisions (e) and (f), section 366.22 does not address the juvenile court's discretion to return the child to his or her home and order continued dependency services. Nonetheless, finding the child may be returned to, and safely maintained in, his or her parent's home at the 18-month permanency review hearing while retaining jurisdiction and directing that family maintenance services be provided to the child and his or her parent would appear to fit comfortably within the juvenile court's broad authority to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the [dependent] child." (§ 362, subd. (a); see Cal. Judges Benchguide 103: Juvenile Dependency Review Hearings, *supra*, § 103.13, p. 103-26 [identifying among possible findings and orders at 18-month permanency review hearing, "[c]hild is returned home and dependency continued/not continued. [Citation.] If dependency is continued, court sets review in six months."].)

 A significant difference between continuing child welfare services following a home-of-parent order at the six-month or 12-month review hearing and a similar order at the 18-month permanency review hearing, however, is that the section 366.22 hearing "represents a critical juncture in dependency proceedings." (*Mark N. v. Superior Court, supra*, 60 Cal.App.4th at p. 1015.) "The cutoff date for fostering family reunification is the 18-month status review. At this hearing, the court must return children to their parents and thereby achieve the goal of family preservation or terminate services and proceed to devising a permanent plan for the children." (*In re Elizabeth R., supra*, 35 Cal.App.4th at p. 1788; see *Katie V. v. Superior Court, supra*, 130 Cal.App.4th at p. 596.) "Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826]; see *In re Celine R., supra*, 31 Cal.4th at p. 52.)

We do not believe this 18-month limit on family reunification services constrains the juvenile court's authority to order family maintenance services beyond that time for a child who has been returned to the custody of his or her parent. There is no statutory limit on the provision of family maintenance services if the court believes the objectives of the service plan are being met. (See §§ 364, subd. (d), 16506; *In re Joel T., supra,* 70 Cal.App.4th at pp. 267–268.) There appears to be no reason, in either the language of the governing statutes or the public policy underlying the dependency system, to permit these child welfare services to continue for a family with a dependent child who has never been removed from the home and to deny those services to an otherwise identical family whose child was originally removed and then returned because of the parents' substantial progress in completing their case plan.[16] Indeed, although the Legislature has directed in the anti-tolling provision of section 361.5, subdivision (a)(3), fourth paragraph, that the combined period of family reunification and family maintenance services be considered in determining whether additional family reunification services may be provided—at least to the extent family maintenance services were provided following the initial removal and subsequent return of a child to the custody of his or her parent or guardian (see *In re N. M., supra,* 108 Cal.App.4th at p. 854 [acknowledging argument can be made that family maintenance services should not be counted against 18-month period when child is not removed from parent's custody until after services are provided]—no similar mandate restricts the provision of family maintenance services beyond the 18-month date.[17]

---

[16] We are aware the final sentence of section 361.5, subdivision (a)(3), fourth paragraph, provides, "If at the end of the applicable time period, a child cannot be safely returned to the care and custody of a parent or guardian without court supervision, but the child clearly desires contact with the parent or guardian, the court shall take the child's desire into account in devising a permanency plan." This language was added to a prior version of section 361.5, subdivision (a), in slightly different form in 1992 as part of Senate Bill No. 1564 (1991–1992 Reg. Sess.) (Stats. 1992, ch. 455, § 2, p. 1814), which dealt primarily with including a new subdivision (b)(6) in section 361.5, permitting the juvenile court to deny reunification services to an offending parent who had inflicted severe sexual abuse or severe physical harm on his or her child if the court determined it would not benefit the child to pursue reunification services with that parent. Our review of the legislative history persuades us this language was intended only to ensure the juvenile court consider a child's desire to have continuing contact with his or her parent after reunification services have been terminated, and does not constitute a statutory bar to the court continuing dependency jurisdiction when returning a child to the physical custody of his or her parent at the section 366.22 hearing. (See, e.g., Assem. Com. on Judiciary, Rep. on Sen. Bill No. 1564 (1991–1992 Reg. Sess.) as amended July 6, 1992, p. 2 [proposed legislation provides "a court shall take a child's wishes into account when devising a permanency plan for a child, where at the end of the 18 month reunification period, a child cannot be safely returned to the custody of a parent/guardian without court supervision, but the child clearly desires contact with the parent/guardian"].)

[17] Even if the 18-month limit on reunification services set forth in section 361.5, subdivision (a)(3), third paragraph, were to some extent applicable in this context, the juvenile court would retain at least limited discretion to consider, as a middle option between leaving the

### 6. A Section 364 Review Hearing May Be Held for a Dependent Child Who Has Been Returned to His or Her Parent's Custody Following an Out-of-home Placement

In addition to noting the absence of express language in sections 366.21, subdivisions (e) and (f), or 366.22 authorizing the court to retain jurisdiction and order family maintenance services after returning a dependent child to his or her parent, the juvenile court in this case stated (as it had in other, similar cases according to the declarations submitted with the writ petition) it has no authority to set a section 364 review hearing after terminating an out-of-home placement and entering a home-of-parent order for a dependent child. It follows, therefore, if there can be no further review hearing for the child, the court must necessarily terminate its jurisdiction.

This narrow interpretation of the availability and scope of a section 364 review hearing is apparently based on language from several appellate cases—and, in particular, from the recent opinion by Division Eight of this court in *Janee W., supra,* 140 Cal.App.4th at pages 1450 to 1451—suggesting section 364 applies only when a child has never been removed from the physical custody of the parent or guardian. (See also *In re Sarah M., supra,* 233 Cal.App.3d at p. 1493 ["section 364 applies in cases where the dependent child has not been removed from the original custodial home."].) This analysis unnecessarily restricts the language of the statute itself, misreads the relevant case authority and disregards both an applicable Judicial Council rule and the broad authority of the juvenile court to make orders that further the best interests of dependent children.

The juvenile court must conduct a review hearing for every child who has been declared a dependent of the court at least every six months. (*In re Natasha A., supra,* 42 Cal.App.4th at p. 38; *In re N. S., supra,* 97 Cal.App.4th at p. 172; compare § 366, subd. (a)(1) ["The status of every dependent child in foster care shall be reviewed periodically as determined by

---

child in an out-of-home placement and terminating services, on the one hand, and returning the child to his or her parent's custody and terminating dependency jurisdiction, on the other hand, entering a home-of-parent order and an order for family maintenance services. "[T]he Legislature never intended a strict enforcement of the 18-month limit to override all other concerns including preservation of the family when appropriate." (*Mark N. v. Superior Court, supra,* 60 Cal.App.4th at p. 1016; see § 362, subd. (a); cf. *In re Elizabeth R., supra,* 35 Cal.App.4th at pp. 1798–1799 [§ 352, authorizing continuance of any hearing if not contrary to interests of dependent child, "provides an emergency escape valve in those rare instances in which the juvenile court determines the best interests of the child would be served by a continuance of the 18-month review hearing"]; *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1465–1466 [118 Cal.Rptr.2d 118] [recognizing juvenile court has discretion to continue reunification services past 18-month date in limited circumstances; "we think a compelling argument could be made [by petitioner] in favor of extending the 18-month hearing"].)

the court but no less frequently than once every six months, as calculated from the date of the original dispositional hearing until the hearing described in Section 366.26 is completed."] with § 364, subd. (d) ["If the court retains jurisdiction it shall continue the matter to a specified date, not more than six months from the time of the hearing . . . ."]; see also 42 U.S.C. § 675(5)(B) [under federal law judicial or administrative review of each dependent child's case must be held no less than every six months].) Section 364, subdivision (a), directs the juvenile court to conduct an initial review hearing for a dependent child who has not been removed from the physical custody of his or her parent or guardian within six months of the original disposition hearing pursuant to section 358. However, by its terms a section 364 review hearing must be set following "[e]very hearing" at which an order is made either placing a child under the supervision of the juvenile court or retaining dependency jurisdiction, provided at that hearing no order is made removing the child from the physical custody of his or her parent or guardian. (§ 364, subds. (a), (d).) In view of the Legislature's direction that we "liberally construe[]" the dependency laws "to preserve and strengthen the minor's family ties whenever possible" (§ 202, subd. (a)), we have no difficulty concluding a hearing at which an out-of-home placement is terminated and a home-of-parent order entered is the equivalent of a hearing "in which the child is not removed from the physical custody of his or her parent or guardian" within the meaning of section 364, subdivision (a). (See Cal. Judges Benchguide 103: Juvenile Dependency Review Hearings, *supra*, § 103.13, p. 103-26 [identifying among possible findings and orders at six-, 12- and 18-month review hearings continuing dependency jurisdiction and setting further review hearing pursuant to § 364, subd. (d)].) Moreover, as the court explained in *In re N. S., supra*, 97 Cal.App.4th 167, to interpret section 364 narrowly, as suggested by the juvenile court in this case, would leave an unacceptable gap in the statutory scheme: "Unless section 364 applies, there is no statute governing the court's review hearings for a minor who has been removed from, but is subsequently placed back in, parental custody." (*In re N. S.*, at p. 172.)

This commonsense construction of section 364 and related dependency statutes is further supported by rule 5.710(e)(2), which provides, as to a child who has been returned to the custody of a parent or guardian after initially being removed, the court "may order the termination of dependency jurisdiction or order continued dependency services and set a review hearing within 6 months." That further review hearing can be conducted only pursuant to section 364. (See *In re N. S., supra*, 97 Cal.App.4th at p. 172.)[18] In addition, rule 5.710(a)(2) directs the juvenile court to conduct a section 364 review

---

[18] The juvenile court utilized this procedure in this case in June 2005 at the 12-month permanency review hearing under section 366.21, subdivision (f), when it entered home-of-parent orders for Bridget, Christopher and their three siblings, retained jurisdiction and set a further review hearing for December 5, 2005 pursuant to section 364.

hearing every six months for any dependent child who "remains in the custody of the parent or guardian." The rule draws no distinction between a child who was never removed from the custody of his or her parent and one who "remains" in his or her parent's custody at the time of the review hearing following an initial removal and subsequent return home. (Cf. *Sara M. v. Superior Court, supra,* 36 Cal.4th at p. 1014 [recognizing significant persuasive force of interpretation of dependency statutes contained in the California Rules of Court].)

None of the appellate decisions discussing when section 364 properly governs a periodic review hearing in the juvenile court mandates a different result. In *Janee W.* Division Eight considered only whether section 364 or section 361.2 provides the applicable procedural rules in reviewing the status of dependent children who had been taken from the physical custody of their mother and eventually placed with their father, with whom they did not live at the time they were first detained. Under section 361.2, subdivision (a), when the juvenile court orders the removal of a child from a parent's home and determines a noncustodial parent desires custody, it must place the child with that parent unless it finds that doing so poses a risk of harm to the child. Although section 361.2 by its terms applies only when the juvenile court first takes jurisdiction of a child, relying upon the relevant rules of court (former rules 1460(h) [now rule 5.710(h)], 1461(c)(2) [now rule 5.715(c)(2)]), Division Eight held its procedures can be invoked at either the six-month or 12-month review hearings, as occurred in the case before it. (*Janee W., supra,* 140 Cal.App.4th at p. 1451.) Accordingly, the question whether to terminate jurisdiction should have been determined under the standards of section 361.2, not section 364.[19] The court's explanation of its holding—Section 364 applies when a dependency court determines that jurisdiction under section 300 is appropriate, but 'the child is not removed from the physical custody of his or her parent or guardian . . . .' [Citation.]" (*Janee W.,* at p. 1450)—is not authority for the proposition the juvenile court may not set a section 364 review hearing after entering a home-of-parent order at the six-month, 12-month or 18-month review hearing. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613] [it is "axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues

---

[19] When deciding whether to terminate dependency jurisdiction under section 361.2 following placement of a child with a previously noncustodial parent, the court determines only whether there is a need for continued supervision, not whether the conditions that justified taking jurisdiction in the first place still exist, as required under section 364. (Compare § 361.2, subd. (b)(1)–(3), and *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1134–1135 [13 Cal.Rptr.3d 616] with § 364, subd. (c), and *Janee W., supra,* 140 Cal.App.4th at p. 1451.)

before the court. An opinion is not authority for propositions not considered."]; *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [36 Cal.Rptr.3d 495, 123 P.3d 931] [same].)

The issue in *In re Sarah M., supra*, 233 Cal.App.3d 1486, was similar to that presented by *Janee W.*: Is termination of dependency jurisdiction with respect to a child removed from her custodial parent and placed with a nonoffending, noncustodial parent (here, her father and stepmother) properly determined under the standards of section 364 or 361.2? (*Sarah M.*, at pp. 1493–1494.) The court concluded section 361.2 applied and held before terminating its jurisdiction the juvenile court must make a factual finding that supervision is no longer necessary. (*Sarah M.*, at p. 1498.) As in *Janee W.*, the general language in *In re Sarah M.* concerning the authority of the court to conduct a section 364 hearing when a child has initially been removed from the home of a custodial parent simply does not apply to the issue presented by Bridget and Christopher's writ petition: whether a section 364 review hearing may be set for a child who has been removed from, but then returned to, parental custody.[20]

In sum, whether at the six-month, 12-month or 18-month review hearing, the juvenile court has the authority, in its discretion, to return a dependent child to the physical custody of his or her parent or guardian and either to terminate its jurisdiction or to retain dependency jurisdiction and order family maintenance services to ensure the safety and physical and emotional well-being of the child.[21] In their petition to this court, Bridget and Christopher present powerful arguments as to why, although a home-of-parent order was appropriate, continued court supervision is necessary for their protection and to ensure the conditions leading to dependency jurisdiction are not likely to recur. The juvenile court erred in refusing to consider those arguments, advanced initially before it by the Department and supported by Bridget and Christopher. Accordingly, we grant the petition, vacate the order terminating dependency jurisdiction and return the matter to the juvenile court for an appropriate exercise of its discretion in determining whether to retain jurisdiction in this case.

---

[20] The court in *In re Sarah M., supra*, 233 Cal.App.3d at page 1493 cited *In re Esperanza G.* (1985) 173 Cal.App.3d 358, 360 [218 Cal.Rptr. 827], for its general statement regarding the unavailability of a section 364 hearing when a child has been removed from the original custodial home. In *Esperanza G.*, Division Four of this court held only that the standards for terminating jurisdiction set forth in section 364 do not apply to a dependent child who remains in an out-of-home foster placement. (See *In re N. S., supra*, 97 Cal.App.4th at p. 171 [the court in *Esperanza G.* "merely quoted section 364 and did not analyze whether it applied to minors who have been removed from, but are returned to parental custody"].)

[21] Of course, if the Legislature disagrees with our construction of sections 364 and 366.22, it remains free to amend the statutes to better reflect its intent. (See *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd., supra*, 19 Cal.4th at p. 1199; *In re Summer H., supra*, 139 Cal.App.4th at p. 1334.)

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent juvenile court to vacate that portion of its order of November 6, 2006 terminating jurisdiction over Bridget A. and Christopher A., as well as their siblings Joseph and Xochitl E., to issue a new order setting a hearing to determine whether continued court supervision is necessary to ensure the children's safety in the home of their mother and to conduct further proceedings not inconsistent with this opinion.

Johnson, J., and Zelon, J., concurred.