Filed 3/19/21  In re Savannah M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Savannah M., a Person Coming Under the Juvenile Court Law. | B304519 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Jason M., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP03749A) |

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

Jason M., the father of Savannah M., challenges a juvenile court's monitored visitation order because the order does not say his girlfriend may monitor visits. We affirm.

Savannah's mother and father lived separately and shared custody of Savannah. The Department of Children and Family Services (the Department) received a referral after four-year-old Savannah told a therapist that her father punished her by slapping her face and saying profanities.

Savannah told a Department social worker that her father would hit her on her arms and legs. Savannah reported to her therapist that her father made her stand and hold her arms up for long periods of time as punishment. During the Department's investigation, the father told Savannah not to tell her mother, therapist, or the social worker about the ways he punished her. The father denied physically abusing Savannah.

On June 13, 2019, the Department filed a dependency petition under section 300 of the Welfare and Institutions Code on behalf of Savannah. The petition alleged Savannah was at risk of serious physical harm from the father (Welf. & Inst. Code, § 300, subd. (a)) and alleged the father failed to protect Savannah from serious physical harm (Welf. & Inst. Code, § 300, subd. (b)). The juvenile court detained Savannah from the father, ordered her released to the mother, and granted the father monitored visitation.

The father asked the court to allow his girlfriend to monitor visits. The court ordered the Department to assess whether the girlfriend would be an appropriate monitor.

The Department believed the girlfriend would not be an appropriate monitor because she and the father lived together and were in a romantic relationship. The girlfriend's lack of neutrality could diminish her ability to perform the responsibilities of being a

monitor, which include terminating visits if necessary to enforce rules and boundaries.

On November 25, 2019, the court agreed with the Department and asked the father if he had someone more neutral who could be a monitor. The court said, "It does sort of put your girlfriend in [an] awkward position."

The court held an adjudication hearing on January 27, 2020. Counsel represented the father, who did not attend. The court assumed dependency jurisdiction over Savannah. It found by a preponderance of the evidence that the failure to protect count was true. That count stated, "On prior occasions, the child Savannah [M.'s ] father, Jason [M.] physically abused the child in that the father slapped the child's face. On prior occasions, the father hit the child's arms and legs and forced the child to stand with the child's arms held up for an extended period of time. The child is afraid of the father. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The physical abuse of the child by the father[] endangers the child's physical health, safety and well-being, creates a detrimental home environment and places the child at risk of serious physical harm, damage, and physical abuse."

The same day, the court terminated jurisdiction subject to a custody order. The court ordered joint legal custody and gave the mother sole physical custody of Savannah. It granted the father monitored visitation. The monitor could be someone the father and mother agreed upon or the father could pay for a professional monitor. The mother said she had a monitor she believed she and the father could agree upon and if not, they could have a mediation.

We review a court's decision to issue a custody order when it terminates dependency jurisdiction for an abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) We

3

may not disturb the order unless the court made an arbitrary, capricious, or patently absurd determination. (*Id.* at pp. 300–301.)

The court's monitored visitation order was not an abuse of discretion. The father's sole complaint about the order is its failure to include his girlfriend as a monitor. This was not arbitrary, capricious, or patently absurd. The court had found the father used excessive punishment that constituted physical abuse, a finding the father does not challenge on appeal. The court required a monitor due to the risk of this misconduct recurring. It was reasonable to believe the girlfriend's allegiance to the father might make her reluctant to report misconduct. The court properly exercised its discretion by offering two appropriate options for selecting a monitor.

The father offers an infirm argument about the unrelated issue of caregiver monitors. The father's logic is as follows: caregivers who want to adopt a child are not neutral, courts routinely allow those non-neutral caregivers to monitor visits, therefore it was arbitrary to disallow the father's girlfriend for being non-neutral. But departures from routine practice can be sound. And there can be a difference between someone who wants to adopt and someone who is romantically involved with a parent. People who want to adopt generally are devoted to the child's welfare, which may be less true of people whose main connection with the child is a romantic relationship with a parent. Courts may consider a proposed monitor's lack of neutrality. The court's order was not arbitrary.

The court's decision properly centered on Savannah's best interests. Courts focus on the child's best interests when making custody and visitation orders. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) The court's caution, with Savannah's safety in mind, was appropriate. The court did not abuse its discretion by

4

considering how the proposed monitor's lack of neutrality could affect Savannah's interests.

The father also says the order effectively bars him from visiting Savannah, but this argument has no basis. The father has not claimed he cannot afford a monitor. Nor has he pointed to evidence he and the mother cannot agree on a monitor. The mother suggested otherwise at the hearing when she said she had a monitor in mind and thought the father would agree.

## DISPOSITION

We affirm.


WILEY, J.


We Concur:


GRIMES, Acting P. J.


STRATTON, J.

5