Filed 10/31/13  In re W.N. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re W.N., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>W.N. et al.,<br><br>    Defendants and Respondents;<br><br>W.N.,<br><br>    Appellant. | E057787<br><br>(Super.Ct.No. RIJ100291)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

The petition for rehearing is denied.  The opinion filed in this matter on October 10, 2013, is modified as follows:

1

1. In the "Discussion" section "A," the first paragraph on page 10 is deleted and replaced by the following:

Next, Minor asserts the juvenile court erred because it abdicated its responsibility to Minor as *parens patriae*.[2] Minor contends the court had a duty to protect him from Mother and it abdicated that responsibility by telling Father he had the option to seek custody orders in the family court. Minor's argument is not persuasive because this court has concluded *ante*, that the evidence supports the juvenile court's finding that Mother did not pose a risk of detriment to Minor. In particular, we have explained *ante*, "there is evidence reflecting that Mother voluntarily left the family home and only visited on a single occasion over a period of months, [therefore making it] reasonable for the juvenile court to conclude that Mother did not pose a risk of real detriment to [Minor]." Since the record supports the juvenile court's finding that the detriment findings related to Mother have been resolved, it would be contradictory for the juvenile court to issue exit orders limiting Mother's contact with Minor under a *parens patriae* theory. Given the potential contradiction, we find Minor's argument to be unpersuasive.

---

[2] """'Parens patriae,' literally 'parent of the country,' refers traditionally to [the] role of [the] state as sovereign and guardian of persons under legal disability . . . .""" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 776, fn. 14.)

Except for this modification, the opinion remains unchanged. The modification does not affect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

McKINSTER _____
J.

3

Filed 10/10/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re W.N., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057787 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ100291) |
| v. | OPINION |
| W.N. et al., | |
| Defendants and Respondents; | |
| W.N., | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County. Jacqueline C. Jackson, Judge. Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Appellant.

Pamela J. Walls, County Counsel, Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

No appearance for Defendants and Respondents.

Defendants and respondents T.L. (Mother) and W.N (Father) (collectively, "Parents") share a son, appellant W.N. (Minor). Through the juvenile court, the family was placed on a maintenance plan. At a review hearing, the juvenile court placed Minor in Father's physical custody and terminated the dependency case. Minor contends the juvenile court erred by not entering custody and visitation exit orders that would have restricted Mother's contact and visitation with Minor. Alternatively, Minor asserts the juvenile court erred by denying his request for a continuance. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Mother's daughter, D.L., was removed from Mother's custody by the County of Riverside Department of Public Social Services (the Department) when D.L. tested positive for opiates at her birth in October 2000. Mother was unable to reunify with D.L., and D.L.'s adoption was finalized in 2002. P.A. was D.L.'s alleged father.

In February 2012, Mother and Minor tested positive for cocaine and marijuana when Minor was born. Mother was referred to Family Preservation Court. After entering the program, Mother "continuously tested positive for marijuana and/or opiates." The Family Preservation Court placed Mother on a 30-day behavioral contract, which provided Mother would be terminated from the program if she did not follow the terms of the contract. In March 2012, Mother was terminated from the program for failing to call or check-in.

A Department social worker went to Parents' house. Parents had a boyfriend/girlfriend relationship—they were not married. Mother was unemployed, and

2

Father was the sole financial provider for Mother, Minor, and Father's two teenage sons from a previous relationship. Mother admitted to smoking marijuana for 22 years and abusing heroin in the past. However, Mother explained that the recent positive drug test results were due to taking narcotic pain medication after a car accident. Mother stated that she failed to call the preservation program because she was hospitalized. Father denied ever abusing drugs or alcohol; however, Father's criminal history reflected Father previously abused drugs. Father's two teenage sons denied ever seeing Mother abuse drugs or be under the influence of drugs.

The Department filed a petition alleging Mother failed to protect Minor by (1) consuming drugs before and after Minor's birth; (2) having a "chronic and untreated history" of abusing drugs; (3) losing her parental rights to D.L.; and (4) having a criminal history that included a drug-related arrest. (Welf. & Inst. Code, § 300, subd. (b).)[1] The petition alleged Father failed to protect Minor because he should have known Mother was abusing drugs. (§ 300, subd. (b).)

The juvenile court found the Department presented a prima facie case. The court ordered Minor remain in Parents' physical custody, but that Parents participate in family maintenance services, such as counseling for Father and drug testing for Mother.

At the jurisdiction/disposition hearing, the juvenile court found the four allegations related to Mother to be true. The court found the allegation concerning Father to be untrue. The court adjudged Minor a dependent of the court, but placed

---

[1] All subsequent statutory citations will be to the Welfare and Institutions Code unless otherwise indicated.

3

Minor in Parents' care. The court ordered Parents to participate in family maintenance services.

Mother enrolled in a drug abuse treatment program in April 2012. In May 2012, Father asked Mother to move out of their home because Mother continued to abuse drugs. Parents ended their romantic relationship. Mother stopped participating in the drug treatment program and was discharged in June 2012. When a Department social worker contacted Mother, Mother said "she did not have time to deal with this." Mother "occasionally" called Father to check on Minor. Mother visited with Minor for an hour on one occasion when she came to Father's house to retrieve her mail.

In a written document filed prior to the review hearing, the Department recommended the juvenile court "[t]erminate [the] dependency upon family law orders." At the review hearing, Minor's attorney recommended the Department file a supplemental petition (§ 387) concerning Mother, and that the court "give [Father] appropriate custody orders." Mother's attorney asserted that Mother "disassociate[d] herself from the family," so no other orders were needed. Father's attorney requested the juvenile court enter "family law orders where [Father] has sole legal, sole physical [custody]," while ordering supervised visits for Mother.

Mother's attorney asserted the juvenile court could not legally take physical and legal custody of Minor away from Mother because there were never findings made concerning removing Minor from Mother's care, so Mother had no notice of the possible custody orders. Minor's attorney agreed with Mother's attorney saying, "[Y]ou can't even make protective orders on the family law order because there's been

4

no removal because the Department hasn't filed a 387. So I'm opposed to terminating." Minor's attorney argued that the Department could file a supplemental petition and request family law orders, but that it would be inappropriate to close the instant dependency case without an order restricting Mother's contact with Minor.

The juvenile court said, "[T]he Court is going to move forward with termination. The Court's going to recommend to father that if he wishes to have sole custody, physical and legal, of the baby, that you need to go to Family Law Court. [¶] Okay. [Father's attorney] can let you know how that works, but I'm not able to do that today." The juvenile court ordered Minor be placed "in [the] care and custody of his father." The court found the "conditions justifying the initial assumption of jurisdiction under Section 300 no longer exist and are unlikely to recur[.]" The court terminated the dependency case.

## DISCUSSION

### A. EXIT ORDERS

Minor contends the juvenile court erred by terminating the dependency case without entering exit orders granting Father sole legal and physical custody of Minor, and restricting Mother's visitation with Minor.

"When the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . the juvenile court on its own motion, may issue a protective order as provided for in Section 213.5 or as defined in Section 6218 of the Family Code, and an order determining the custody of, or visitation with, the child." (§ 362.4.) These orders are typically referred to as "'exit orders.'" (*In*

5

*re T.H.* (2010) 190 Cal.App.4th 1119, 1122.)  However, "[c]hild custody disputes between . . . parents, neither of whom pose a risk of real detriment to the child, should not be waged at taxpayers' expense in the juvenile courts."  (*In re John W.* (1996) 41 Cal.App.4th 961, 965.)

A juvenile court's decisions concerning terminating dependency jurisdiction and issuing exits orders is typically reviewed for an abuse of discretion, which means the court's ruling may not be disturbed unless it is "arbitrary, capricious, or patently absurd."  (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

At the review hearing, Minor's attorney argued that it was unclear whether Mother would return to the home when the Department stopped supervising the family. Minor's attorney expressed concern that Mother had been at the house visiting Minor when it appeared Mother was not receiving treatment for her drug abuse issues. Mother's attorney argued that Mother voluntarily left the home and "disassociate[d] herself from the family," so there was no need for exit orders.  Father's attorney asserted Mother's visit to the family home "was a one-time incident," and Father had not seen Mother for two months.  Father's attorney argued, "[I]t appears that father [has] done everything to protect this child.  There's no risk to this child."

Minor's attorney argued Mother was "coming over to the home randomly."  The juvenile court remarked, "Well, on one report we have her at the home, but I have an oral addendum on behalf of the Department that says that was an isolated incident.  [¶] We have a public health nurse that goes weekly [to the house] and never saw mom

6

there. The social worker that goes monthly and never saw mom there. I have to weigh that too."

Minor's attorney asserted that Parents knew when the nurse was coming to the house; implying that Mother would have time to leave the house before the nurse arrived. The juvenile court then terminated jurisdiction without entering exit orders and recommended Father seek assistance in the family law court.

It appears from the record that the juvenile court thoughtfully weighed the evidence concerning whether Mother posed a risk of real detriment to Minor. The court considered the evidence supporting the speculative possibility that Mother was regularly visiting Minor or could, in the future, regularly visit Minor. The court also considered the evidence that Mother had only visited the home on a single occasion and had not returned to the house for two months. Given that the trial court carefully considered the evidence, the court's decision does not appear to be arbitrary or capricious.

Further, since there is evidence reflecting that Mother voluntarily left the family home and only visited on a single occasion over a period of months, it was reasonable for the juvenile court to conclude that Mother did not pose a risk of real detriment to Minor. Additionally, the juvenile court found Father was protective and properly cared for Minor. Since neither parent posed a risk of real detriment to Minor, it was reasonable for the juvenile court to decline to enter exit orders and refer Father to the family court. Accordingly, we conclude the juvenile court did not abuse its discretion.

Minor contends the juvenile court erred because it "appear[s] to have operated under the incorrect notion" that a supplemental petition needed to be filed before the

court could make an exit order restricting Mother's custody and contact with Minor. We interpret the record differently than Minor. Our reading of the record reflects a discussion amongst the court and the attorneys concerning the issue of whether Mother posed a risk of real detriment to Minor, such that a protective order or custody order should be issued. For example, the juvenile court remarked on the evidence reflecting that Mother had been found at the house only one time despite a nurse visiting the house on a regular basis. Given the discussion, it appears to this court that the juvenile court was aware of its authority to issue exit orders, but the juvenile court concluded the family court was the better venue for making custody orders.

In support of his argument, Minor cites the following comment by the juvenile court: "'The Court's going to recommend to father that if he wishes to have sole custody, physical and legal, of the baby, that you need to go to Family Law Court. [¶] Okay. [Father's attorney] can let you know how that works, but *I'm not able to do that today*.'" (Italics added.) Minor asserts this comment reflects the juvenile court's belief that it did not have the authority to issue exit orders because a supplemental petition had not been filed. We interpret this comment as reflecting the juvenile court could not issue custody and visitation orders because it found Mother did not pose a risk of real detriment to Minor, thus making the orders an issue for the family court. Accordingly, we find Minor's argument to be unpersuasive.

Next, Minor asserts the juvenile court erred because it abdicated its responsibility to Minor as *parens patriae*.[2]  Minor contends the court had a duty to protect him from Mother and it abdicated that responsibility by telling Father he had the option to seek custody orders in the family court.  Minor's argument is not persuasive because he is not appealing the juvenile court's finding that "conditions justifying the initial assumption of jurisdiction under Section 300 no longer exist and are unlikely to recur if supervision is withdrawn."  Since all the "true" findings related to Mother, it would be contradictory for the juvenile court to issue exit orders limiting Mother's contact with Minor under a *parens patriae* theory, while at the same time having a finding in place reflecting that all the problems leading to the dependency have been resolved.  Given the potential contradiction, we find Minor's argument to be unpersuasive.

B.     CONTINUANCE

Minor contends the juvenile court erred by denying his attorney's implied request for a continuance of the review hearing so the Department could file a supplemental petition concerning Mother.

"Continuances are discouraged [citation] and we reverse an order denying a continuance only on a showing of an abuse of discretion.  [Citation.]"  (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811.)

---

[2] "'''Parens patriae,' literally 'parent of the country,' refers traditionally to [the] role of [the] state as sovereign and guardian of persons under legal disability . . . .'''" (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 776, fn. 14.)

During the discussion between the juvenile court and the attorneys, Minor's attorney said, "I think the Department should file a 387 on this case so we have some idea about mom's situation and give dad appropriate custody orders if we are closing the case." The attorney continued, "So at this point, I'm opposed to termination. If the Court wishes to do so, I just would ask my objection be noted."

It appears from the record that Minor's attorney did not make an implied request for a continuance. Rather, he expressly stated his reasons why the court should not terminate jurisdiction and explained that he was objecting to termination. Given that a continuance was not requested, we conclude the juvenile court acted reasonably in not granting a continuance.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

McKINSTER _____
J.

10