Filed 11/20/13  In re K.H. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.H., a Person Coming Under the Juvenile Court Law. | B247467 (Los Angeles County Super. Ct. No. CK92721) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL H.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Father Michael H. appeals from an exit order limiting his contact with his son K.H. to monitored visits pursuant to Welfare and Institutions Code section 362.4.[1]  He contends the Los Angeles County Department of Children and Family Services (Department) failed to give him adequate notice of its recommendation that his visits with his son be supervised, and that the dependency court abused its discretion when it terminated jurisdiction over the matter with a family law order that restricted his visitation rights unfairly.  We affirm.

**FACTS**

The Department filed its original dependency petition in this case on March 26, 2012, alleging under subdivision (a) of section 300 that K. was at risk of harm due to the parents' history of engaging in violent confrontations in his presence.  The Department identified a specific incident on March 20, 2012, during which father was alleged to have struck mother in the face with his fist.  It also alleged prior incidents of domestic violence.  The same allegations were cited as the basis for a separate count alleging K. was a child described by subdivision (b) of section 300.  Father denied the prior incidents of domestic violence.  Father was incarcerated at the time the Department filed its petition.

On March 26, 2012, the dependency court entered a temporary restraining order prohibiting father from contact with mother or K. but permitting supervised visitation.  The court also made a prima facie finding on the petition and ordered K. detained from father, while ordering that K. remain in the home.

On April 23, 2012, a jurisdiction/disposition report was filed, stating among other things, that father was enrolled in a 52-week domestic violence course.

---

[1]  All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

On May 30, 2012, the dependency court entered a permanent restraining order against father, requiring him to stay at least 100 yards away from mother and K., except for during supervised visitation. The court made a true finding on the subdivision (b) allegation of the petition and removed K. from father and ordered him placed with mother. It dismissed the allegations under subdivision (a) of section 300. The court ordered reunification services and monitored visitation for father.

On August 22, 2012, the social worker assigned to the case spoke with Dr. Alice Harris at Parents of Watts Working to confirm whether father was enrolled in parenting classes there. Father was not enrolled, but Dr. Harris assured the social worker that father could enroll and Parents of Watts Working would waive the class fee. The social worker called father and relayed the information, adding that he would still need to participate in individual counseling with a licensed therapist. Father asked if he could complete his therapy with Parents of Watts Working. The social worker responded that it was unlikely Parents of Watts Working would waive that fee because it had already waived the parenting class fee.

On August 27, 2012, the social worker contacted several agencies to obtain individual counseling for father that was either free or available for a reasonable fee. She selected Didi Hirsch, which charged $10, and Family Source at Watts Labor Community Actions Committee, who would provide father therapy for free, as the most appropriate options for father. Both agencies indicated father should contact them directly. The social worker spoke with father later that day to discuss his options. Father expressed an interest in obtaining counseling at Parents of Watts Working but was under the impression the social worker had told Parents of Watts Working that he could not complete his individual counseling there. The social worker stated that he could, in fact, receive counseling at Parents of Watts Working if Dr. Harris was a licensed therapist. She urged father to contact the other two agencies she found for him that day, so that he could begin his sessions as soon as possible. After speaking with father, the social worker attempted to contact Parents of Watts Working by telephone four times without

3

success. Finally, she wrote an e-mail to the agency stating father could complete his counseling there as long as Dr. Harris was a licensed therapist.

On August 28, 2012, the social worker was able to contact Ms. Roberta Wilkerson at Parents of Watts Working and emphasized to her that father could complete his counseling there as long as Dr. Harris was a licensed therapist. Father was in Ms. Wilkerson's office, and she repeated the information to him. The social worker then spoke to father personally and reiterated the information.

Father informed the social worker that he was participating in individual counseling with Dr. Harris on September 11, 2012.

On November 1, 2012, the Department liberalized father's visitation to allow unmonitored visits, with the condition that father must continue to participate in the court-ordered services.

On December 4, 2012, both parents appeared for a review hearing and requested the matter be set for a contest. K.'s counsel raised the issue of whether father's therapist was properly licensed. The dependency court ordered the Department to investigate this issue and report back to it by February 1, 2013.

On February 1, 2013, the Department reported that Dr. Harris was not a licensed therapist.

On February 7, 2013, the Department further explained in its report that Dr. Harris's title of "Dr." was merely honorary. Based on this information, the Department changed its recommendation and asked the dependency court to issue an exit order providing for monitored visitation for father. Over father's objection, the court terminated jurisdiction and ordered father to continue to have monitored visitation with K.

Father timely appealed.

## DISCUSSION

We agree father did not forfeit his due process claim that he was not given adequate notice of the Department's change of position prior to the hearing. Father's counsel specifically stated: "This court is about notice. This court is about due process." He argued the Department was "changing the rules at the end of the game." The dependency court addressed the issue, essentially finding that father had notice there was a potential problem with his compliance that could affect his visitation rights: "Counsel, I am going to follow the recommendation, father must have known who [Dr. Harris] is. She's a community activist, and she's not a doctor. Somebody gave her this honorary doctorate title, and she's a sweet lady and that's why they call her Sweet Alice, but she's not qualified, so I'm going to terminate the matter[.]"

The facts support the dependency court's finding. Father was made aware that he was required to obtain individual counseling from a licensed therapist multiple times several months prior to the hearing. The social worker informed him that he could participate in counseling at Parents of Watts Working on the condition that Dr. Harris was a licensed therapist. Father's visitation with K. was liberalized on the condition he continue to engage in court-ordered services. At the review hearing, K.'s counsel raised the issue of whether Dr. Harris was a licensed therapist, and the court ordered the Department to investigate the issue and report back. The report stated that Dr. Harris was not credentialed. Father was aware his compliance with the court order was in question, and his unsupervised visits with K. were dependent on his compliance. Father knew the Department would likely change its position based on the information that Dr. Harris was not credentialed. In light of this evidence, the court's finding that notice was adequate was not error.

Even if the dependency court's finding was in error, however, father's contention would fail because any error was harmless. (See *In re James F.* (2008) 42 Cal.4th 901, 904-905 [dependency court's appointment of a guardian ad litem for a mentally incompetent father without conducting an appropriate hearing held harmless error]; *In re*

5

*A.D.* (2011) 196 Cal.App.4th 1319, 1327 [failure of the social services agency to provide a mother with the statutorily mandated notice of a hearing at which the dependency court terminated her reunification services and ordered long-term foster care held harmless error].) Here, prejudice can be determined without "'a speculative inquiry into what might have occurred in an alternate universe.' [Citation.]" (*In re James F.*, *supra*, at p. 914.) The Department's recommendation was dependent on father's compliance with the court's orders, and father makes no argument that he was in compliance with those orders or that he would have been had the Department changed its recommendation earlier. The outcome of the proceeding has not been affected, so reversal is not required. (*Id.* at p. 918.)

Finally, the dependency court did not abuse its discretion in making its exit order. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.) "[T]he ultimate consideration in a dependency proceeding is the welfare of the child [citations] . . . ." (*In re James R., supra,* 42 Cal.4th at p. 915.) Father argues that he was predominantly compliant with the dependency court's orders, exhibiting commitment, and making progress in his therapy and individual classes. While this may be true, it was not unreasonable for the dependency court to require that his progress be evaluated by someone who was trained and licensed to conduct therapy sessions and make such evaluations. Dr. Harris was not so qualified. Moreover, the primary focus of the court's inquiry was not on father, it was on K.'s best interests. Given father's prior history of violence, the court did not abuse its discretion in ordering that a licensed professional evaluate father's ability to parent.

## DISPOSITION

The order is affirmed.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


KUMAR, J.*

---

\*       Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.