Filed 1/21/15  In re Bianca B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re BIANCA B., et al., Persons Coming Under the Juvenile Court Law. | B257427 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FALLON B.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK98406) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Margaret S. Henry, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Fallon B. (mother) appeals from the juvenile court's judgment terminating jurisdiction and order awarding mother only monitored visitation with her three children, Bianca B., age nine, Cadence P., age eight, and M. J., age three. Mother contends that (1) she was not provided with adequate notice that the court would modify her visitation, and (2) continued jurisdiction was in the children's best interests because the court did not have sufficient information about the children's fathers' ability to provide them with safe homes or "the quality of the children's visits with [] mother." We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2011, the Department of Children and Family Services (Department) received a referral alleging that mother had "mental health issues" and there was domestic violence between her and Mi., M.'s father. The Department found the allegations to be "substantiated," and recommended that mother enroll in parenting and domestic violence classes. Mother voluntarily agreed to participate in family maintenance services but did not complete the domestic violence class.

On March 5, 2013, mother walked into M.'s day care shouting for M. The director of the day care said that mother was "in a rage screaming and holl[er]ing I want my mother fucking baby right now," and "grab[bed] the baby and his backpack and r[a]n for the front door." Mother "was complaining Mi. [had] serve[d] [her] [with] some court paper trying to take [her] m[other-]f[ucking] son," and threatened that Mi. would "never see him again." Two days later, mother came to pick up M. at the day care center with a black eye and bruises on her body, and told the director the injuries were a result of a fight with her girlfriend.

On March 8, 2013, the Department received a referral alleging that mother and her girlfriend, Jessica E., engaged in frequent domestic violence. According to the reporting party, the children had been present during a recent incident which left mother with two black eyes, scratches on her face, and a "big gash" on her arm.

The Department investigated the referral. Mother denied any domestic violence with Jessica, but admitted that she had previously engaged in domestic violence with

Mi. and Bryant P., Cadence and Bianca's father.[1] Mother said that both Mi. and Bryant had punched her, and that she had attempted to stab Bryant.

Mi. claimed that mother was often the aggressor and had stabbed him in the leg. Mi. further reported that, in early March 2013, he had observed mother with a black eye, and mother had told him she had "got[ten] into a fight with her girlfriend." Bryant also said that mother had been the aggressor during their fights and had punched him multiple times. The girls, Bianca and Cadence, denied having witnessed domestic violence between mother and her girlfriend.

On March 22, 2013, the Department filed a petition alleging that the three children were at risk due to domestic violence in the family. Bryant was deemed the presumed father of Cadence and Bianca, and Mi., M.'s presumed father.[2] The court detained the children, but ordered that Bianca remain in mother's custody, and Cadence and M., in their parents' joint custody. The children were to continue to reside with their fathers during the week, and to stay with mother on the weekends. The court further ordered that Jessica was not to be present during the children's visits.

A social worker from the Department interviewed the family again in early April 2013. Bianca said that mother "argue[d] a lot" with Jessica, but denied witnessing any physical altercations between them. Cadence confirmed that she "always" saw mother and Jessica fighting, that she had seen them fight more than 20 times, and that Jessica had hit mother. Mother still denied the allegations of domestic violence between her and Jessica.

Mi. reported that, after he had seen mother with two black eyes, Jessica had called him and admitted she had gotten into a "bad" fight with mother and had "broke out" mother's car windows. Mi. also said that mother had threatened to send M. out of

---

[1]    Bryant was Cadence's biological father and had also acted as a father to Bianca since her birth. Bianca's biological father had never been involved in her life.

[2]    Bryant was deemed Cadence's presumed father at the detention hearing, and, later on, the court also found him to be Bianca's presumed father.

state to a family member.  Bryant said that Cadence and Bianca had told him that Jessica was present during the girls' recent weekend visit with mother.

On April 26, 2013, the Department filed an ex parte application asking the court to detain the children from mother's custody on the grounds that mother continued to deny the allegations of domestic violence and there was evidence Jessica had been present during a recent visit with the children.  The court granted the request and limited mother's contact with the children to monitored visits.

On May 10, 2013, the court sustained allegations that mother's history of domestic violence with both Mi. and Jessica endangered the children.  Mother was ordered to participate in domestic violence counseling, a parenting class, and individual counseling.  Bryant was ordered to attend individual counseling, and Mi. was ordered to attend domestic violence counseling.  Mother's visits remained monitored.

On October 15, 2013, the Department reported that mother was participating in individual counseling but had not attended domestic violence counseling.  By early November 2013, mother had completed a parenting class and had enrolled in domestic violence counseling.  At the six-month review hearing on December 19, 2013, the court ordered unmonitored visitation for mother for two hours a week.  The following week, Mi. reported that mother had gotten into another fight with her girlfriend which resulted in a "gash" to mother's head.

On January 27, 2014, Bryant told the Department that Bianca had returned crying from an unmonitored visit with mother.  Bianca said that she was at church with mother when mother "started screaming and calling her bad words."  Mother had also told her " '[y]ou are lucky that I don't hit you with the broom,' " and had instructed Bianca not to say anything to Bryant, otherwise mother would " 'whoop' " her.

On February 3, 2014, mother told the Department that she had looked up M.'s biological father on-line and that he " 'wants to be a part of [M.'s] life.' "  This individual was told that he needed to participate in a paternity test but did not do so.  Mother informed Mi. that she had found M.'s " 'real daddy,' " and Mi., who was "very

upset," told the Department he believed mother's motive was only to "hurt him." M. was then three years old and had lived with Mi. since he was five months old.

On April 28, 2014, Mi. informed the Department that during mother's last visit with the children, she had taken maternal grandmother's car without permission, had run through a red light while the children were in the car, and had been stopped by the police. The police had impounded the car because mother did not have a valid driver's license.

On June 19, 2014, the Department reported that mother's visitation during the prior six months had been sporadic and recommended that mother's visits be monitored due to mother's erratic behavior. The Department further recommended that the court terminate jurisdiction because there were no "immediate child safety concerns" in the fathers' homes. Although neither Mi. or Bryant had complied with court-ordered therapeutic services, the children were well-cared for and the fathers had provided for all the children's needs.

At a Welfare and Institutions Code[3] section 364[4] review hearing on June 19, 2014, the court stated "the recommendation is to terminate jurisdiction with a family law order. . . . [¶] [T]he report says [Mi.] has not done any of his programs, so we won't be terminating jurisdiction." Mi.'s counsel then indicated that father had completed domestic violence counseling, and mother's counsel stated that she was challenging the Department's recommendations. Accordingly, the court set the matter for a contested hearing on June 27, 2014, and ordered the Department to file a supplemental report on mother's progress in her programs and on her visits.

On June 26, 2014, the Department filed a supplemental report stating that it had received a referral alleging that Bryant had physically abused Bianca. The Department

---

[3]    All other statutory references are to the Welfare and Institutions Code unless otherwise stated.

[4]    Section 364 provides for review hearings every six months when a child is declared a dependent of the court but not removed from the physical custody of his or her parent.

recommended continuing the matter for sixty days for disposition of the referral. The Department further reported that mother had not provided any update regarding her participation in court-ordered services, and had last visited the children a month prior. Mi. filed evidence he had completed a program of domestic violence counseling.

At the contested hearing on June 27, 2014, the court declined to continue the matter on the ground that if the Department substantiated the referral's allegations, it could file a new petition. The court then entered judgment terminating jurisdiction and issued a family law order giving Bryant and Mi. sole physical custody and joint legal custody with mother over their respective children. Mother's visitation with all three children was ordered to be monitored. Mother timely appealed.

## CONTENTIONS

Mother contends (1) she was not provided with adequate notice that her visitation would be modified, and (2) it was not in the children's best interests to terminate jurisdiction because the court did not have sufficient information about the fathers' ability to provide the children with safe homes or "the quality of the children's visits with [] mother."[5]

## DISCUSSION

1. *Mother Was Provided With Adequate Notice*

In this appeal, mother contends she was provided with insufficient notice the court would modify her visitation at the June 27, 2014 hearing. Although mother acknowledges that the Department recommended that the court change mother's visits from unmonitored to monitored, she argues that, due to two subsequent events, she was no longer on notice that her visitation might be changed to monitored: (1) the court said at the June 19, 2014 hearing that it would not "be terminating jurisdiction"; and (2) prior to the continued hearing, the Department made a new recommendation that the case be continued for 60 days.

---

[5]      Mother also initially argued that the juvenile court had no jurisdiction to make exit orders regarding custody and visitation. However, mother conceded in her reply that the court does have this authority under section 362.4.

6

The court modified mother's visitation rights at a review hearing held pursuant to section 364. That section requires that the court hold a review hearing every six months when custody of a dependent child has not been removed from the parent.[6] (Section 364, subd. (a).) At a section 364 hearing, "the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."[7] (Section 364, subd. (c).) When the court terminates jurisdiction, "under section 362.4, it can also make a 'termination' or 'exit' order determining custody and/or visitation." (*In re Natasha A.* (1996) 42 Cal.App.4th 28, 36.)

"The juvenile court is forbidden to change, modify, or set aside its previous orders without advance notice to the minor and [the Department]." (*In re Natasha A., supra,* 42 Cal.App.4th at pp. 34-35.) Mother argues that, here, the court's statement at the earlier June 19, 2014 hearing that it was not terminating jurisdiction and the Department's subsequent recommendation to continue the section 364 hearing misled her into believing that her visitation would no longer be an issue at the contested section 364 hearing held on June 27, 2014.

Mother's apparent confusion as to whether the court was still considering termination of jurisdiction or whether the Department continued to recommend that the case be dismissed is irrelevant to whether she was provided proper notice about the modification of her visitation rights. The court had the power to modify visitation at

---

[6] Section 364 applies when a child has been removed from both parents and returned to only one parent. (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650.)

[7] Mother briefly argues that section 364 requires the court to make express findings when it terminates jurisdiction. However, we note that section 364, unlike other provisions in the Welfare and Institutions Code, does not require the court to make express findings. (C.f. section 361, subd. (d) ["The court shall state the facts on which the decision to remove the minor is based."]; section 361.2, subd. (c) ["The court shall make a finding either in writing or on the record . . . . "])

7

a section 364 hearing even if it did *not* terminate jurisdiction. (*In re Natasha A., supra,* 42 Cal.App.4th at p. 36.) Therefore, even if the court had decided to not terminate jurisdiction, it could still order that mother's visits be changed to monitored. Mother does not dispute that a Department's recommendation that a parent's visitation be changed, served on the parent in advance of a section 364 hearing, constitutes proper notice to the parent that the court may modify her visitation rights. The subsequent events of which mother complains did not alter the Department's recommendation that her visits be changed to monitored and, therefore, did not undermine that notice.

        2.     *The Termination Order was in the Children's Best Interests*

Mother contends that it was not in the children's best interests to terminate jurisdiction with the accompanying exit orders because the court had incomplete information about the safety of Mi.'s and Bryant's homes and mother's progress. Specifically, mother argues that the court should have continued the case to allow the Department time to (1) investigate the recent referral against Bryant, (2) confirm that Mi. had received therapy from a licensed therapist, and (3) update the court as to mother's progress on her court-ordered counseling and the quality of her visits with the children.

"We normally review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody (or 'exit') order pursuant to section 362.4 for abuse of discretion (citation) and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination (citations).' " ' [Citations.]" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 301.)

We conclude that the court acted within its discretion in terminating jurisdiction. Although the Department was still investigating a referral against Bryant, if the Department were to discover evidence substantiating the referral, it could file a new petition reopening the case. Furthermore, the petition at issue in this case did not include any sustained allegations against Bryant, and substantial evidence indicated that Cadence and Bianca were well cared for in his home.

With respect to Mi., mother's claim that he did not receive counseling from a licensed therapist is not supported by the record. The record establishes that Mi. completed 25 sessions of domestic violence counseling and it is unclear if his therapist was licensed. In addition, the court's order that he complete counseling did not require that the therapist be licensed. Furthermore, there was substantial evidence that M. was well cared for in Mi.'s home.

Lastly, the court had sufficient information about mother's participation in court-ordered programs and the quality of her visits with her children to determine that it was in the children's best interests to live with their respective fathers and have only monitored visits with mother. Even if there were evidence mother had completed her court-ordered programs, this alone would not guarantee return of the children to her care; the court must still consider a parent's "progress and [] capacity to meet the objectives of the [reunification] plan . . . . " (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1144.)

Here, there was evidence that, during the six months preceding the section 364 hearing, mother's visits with the children had been sporadic and she had repeatedly engaged in behavior that endangered the children's well-being and safety: yelling at Bianca in church and threatening to hit her with a broom, driving recklessly with the children in the car when mother did not have a license, and attempting to manipulate Mi.'s relationship with M. Based on all this evidence, the court did not abuse its discretion in terminating jurisdiction, granting sole physical custody to Mi. and Bryant, and limiting mother's contact with the children to monitored visitation.

9

## DISPOSITION

The judgment and order are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.*

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.