Filed 12/13/21  In re Nathaniel C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re NATHANIEL C., a Person Coming Under the Juvenile Court Law. | B311179 |
| | (Los Angeles County Super. Ct. No. 18CCJP04923A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| VERONICA G., | |
| Defendant and Appellant; | |
| RODOLFO C., | |
| Intervener and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Cynthia A. Zuzga, Juvenile Court Referee. Affirmed.

Janette Freeman Cochran for Defendant and Appellant Veronica G.

Shaylah Padgett-Weibel for Intervener and Respondent Rodolfo C.

No appearance by Plaintiff.

_____

At the conclusion of dependency proceedings concerning nine-year-old Nathaniel C., the juvenile court issued a custody order pursuant to Welfare and Institutions Code section 362.4[1] awarding Nathaniel's parents, Veronica G. and Rodolfo C., joint physical and legal custody with Veronica having primary physical custody of the child. The order contained detailed provisions for Rodolfo's visitation and custody exchanges and required Veronica and Rodolfo to communicate electronically for those purposes. The juvenile court denied Veronica's request to require Rodolfo to sign a physical log recording his visits with Nathaniel and to provide her with his current address. Veronica appeals the denial of those two requests. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Juvenile Court's Exercise of Dependency Jurisdiction*

The Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300, subdivisions (a) (serious physical harm) and (b)(1) (failure to protect), on August 6, 2018 on behalf of then-six-year-old Nathaniel. The court sustained the petition as amended by interlineation in November 2018, finding that Veronica had used excessive force in grabbing and squeezing Nathaniel's arms.

---

[1] Statutory references are to this code.

Rodolfo was nonoffending. The court declared Nathaniel a dependent of the court, ordered him suitably placed and ordered family reunification services for Veronica and Rodolfo. Both parents' visitation with Nathaniel was initially to be monitored.

In March 2019 Nathaniel was returned to Veronica's custody with an order for family maintenance services. Rodolfo's visitation remained monitored. The following month the Department detained Nathaniel and filed a section 342 petition alleging Veronica had failed to protect Nathaniel following her arrest for driving under the influence of alcohol while Nathaniel was a passenger in the car. The court sustained the subsequent petition, and Nathaniel was again ordered suitably placed by the juvenile court with family reunification services for the parents.

In October 2019 the court granted in part Veronica's request for liberalized visitation (§ 388), allowing weekly overnight visits and unmonitored visitation on other occasions. The following month the court terminated its suitable placement order and returned Nathaniel to Veronica's care under the supervision of the Department. Rodolfo was permitted unmonitored visitation with the Department authorized to liberalize his visitation to include overnight visits. The Department's reports throughout the proceedings revealed Veronica and Rodolfo had a strained, frequently hostile relationship and experienced great difficulty communicating with each other, much less cooperating in coparenting. Those difficulties extended to interactions involving Veronica's husband and Rodolfo's current partner.

Because of the COVID-19 pandemic there were no hearings in the case between November 2019 and March 2021. On

3

March 3, 2021 Veronica and Rodolfo met with a court mediator to discuss the terms of a juvenile court custody order.

2. *Termination of Jurisdiction and Entry of a Juvenile Court Custody Order*

At the section 364 review hearing on March 5, 2021 the court stated the conditions justifying dependency jurisdiction no longer existed and indicated it intended to terminate jurisdiction. Counsel for Veronica and Rodolfo advised the court the parents had reached an agreement for the terms of a custody order.

Counsel for Veronica then requested that Rodolfo provide her his address, which had been kept confidential to that point in the proceedings. He explained Veronica "has had issues with the father responding to her calls and her text messages. And if she wants to be sure that if something like that occurs while the child is with the father that an address be provided in case the father decides that he does not want to respond so the mother can at least know where the child is." Counsel also asked, "[d]ue to these issues regarding the communication between the parents and what my client views as the father not exercising visits over the last few months," that the court require Rodolfo to "sign a log she creates . . . using his own handwriting, so that she can affirm that she has [a] record of each time that father actually does attend one of his visits."

Rodolfo's counsel objected to both of Veronica's requests, noting there was no evidence Rodolfo had been uncommunicative while Nathaniel was in his care, adding, "There are many cases like this, Your Honor, where parents don't get along. My client would rather communicate through email." Counsel explained that Rodolfo had created a separate email account in order to log-in and record visits and observed, "[T]he less contact these

4

parents have during custody exchanges would be better. . . .  I just want to avoid all arguments in front of Nathaniel during these custody exchanges, easy in, easy out."  As to Rodolfo's address, counsel reminded the court it had been confidential throughout the case and said that not allowing Veronica to have the address was necessary for the sake of Rodolfo's peace of mind.

Minor's counsel agreed a physical sign-in sheet could lead to conflict between the parents, but did not object to Rodolfo providing his address to Veronica.  "The father knows where the mother lives.  And if the child's going to be in the father's care, even though she didn't request it in the past, doesn't mean that it's not reasonable for a parent to know where their child is in case there is some type of emergency."  The Department formally took no position on Veronica's requests, but pointed out, "[T]hese parents do have animosity between them" and stated, "[T]he Department believes that it would be in Nathaniel's best interest to have less contact, especially at visits in front of Nathaniel." With respect to the address issue, the Department stated, "Mother certainly has a contact number in case of emergency. And the Department has assessed that [Rodolfo's] home is safe and appropriate for Nathaniel."

The court denied both of Veronica's request, ordering that there be some form of written communication regarding visitation, "through email, confirming their visits, or some sort of online application."  As to Rodolfo's address the court found the request was not supported by the evidence:  "Father has had unmonitored overnight visits.  There haven't been any issues.  I believe that the mother has the telephone number.  So unless there is a greater showing of why the confidentiality should be

breached, the court's not going to allow that to be part of the juvenile custody order."

The court ordered termination of dependency jurisdiction and entered a juvenile court custody order pursuant to section 362.4 awarding the parents joint physical and legal custody of Nathaniel with primary physical custody awarded to Veronica. The custody order specified, "For visitation and child exchange purposes, Mother and Father must communicate through an online-based electronic parenting application."

Veronica filed a timely notice of appeal.

## DISCUSSION

### 1. *Juvenile Court Custody Orders: An Overview*

Once a child has been adjudged a dependent of the juvenile court pursuant to section 300, "any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court." (§ 302, subd. (c); see *In re Anna T.* (2020) 55 Cal.App.5th 870, 876.) When the juvenile court terminates dependency jurisdiction, the court, "on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) Section 362.4 specifies that order "shall continue until modified or terminated by a subsequent order of the superior court" and directs the order be filed in a pending family law proceeding (§ 362.4, subd. (b)) or, if there is none, as part of a new family court file (§ 362.4, subd. (c)).

When making a juvenile court custody order pursuant to section 362.4, "it is the best interests of the child, in the context of the peculiar facts of the case before the court, which are paramount." (*In re John W.* (1996) 41 Cal.App.4th 961, 965;

6

accord, *In re T.S.* (2020) 52 Cal.App.5th 503, 513; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)

We review a juvenile court custody order for abuse of discretion. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re M.R.* (2017) 7 Cal.App.5th 886, 902; see *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124.) We "may not disturb the order unless the court ""exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination."""" (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)

2. *No Abuse of Discretion Occurred*

The juvenile court acted well within its discretion in rejecting Veronica's requests to include in the juvenile court custody order the requirement that Rodolfo sign a physical visitation log and disclose his current residence address to her.

With respect to the visitation log, Veronica asserts a physical document that Rodolfo signed would minimize conflict between the parents because there could be no dispute whether visits actually occurred. The court, however, agreed with Rodolfo and minor's counsel (and with the Department's informal assessment) that, given the continuing animosity between Veronica and Rodolfo, requiring them to personally interact at a custody exchange would increase the prospect of conflict, which would most likely occur in Nathaniel's presence. That determination was unquestionably reasonable given the parties' history.

Veronica suggests in her opening brief the juvenile court should not have assumed she had access to a device that would allow her to communicate electronically with Rodolfo. However, she did not make that argument in the juvenile court, let alone

7

present any evidence she was unable to email Rodolfo or use one of the free, online communication programs for parents. To the contrary, Veronica's counsel complained on her behalf that Rodolfo did not return Veronica's text messages when Nathaniel was visiting with him, plainly indicating Veronica had use of a smartphone or similar device. That objection, if it even is one, has been forfeited. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [forfeiture doctrine applies in dependency proceedings; appellate court generally will not review objection to juvenile court's ruling raised for the first time on appeal]; *In re Alexandria P.* (2014) 228 Cal.App.4th 1322, 1346 [same]; *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 [same].)

Because their case did not involve domestic violence, Veronica's request that Rodolfo be required to disclose his current address to her was not unreasonable. However, during the nearly three years the dependency proceedings had been pending, Rodolfo's address had remained confidential; and, as the court emphasized, that had not created any difficulties for visitation and child exchange. In addition, Veronica had Rodolfo's phone number to use in case of emergencies. Under these circumstances the court's ruling denying disclosure was neither irrational nor arbitrary.

Veronica argues it would be in Nathaniel's best interest for the child to know his father's address, explaining, "If he had a friend over after school or during his weekend visits with Father, the parents would want to know that address." Although that observation may well be true, nothing in the juvenile court custody order precludes Rodolfo from telling Nathaniel or the parents of Nathaniel's friends his address (with or without a request that the information not be shared with others). Nor is

Rodolfo prevented from advising Nathaniel's school or his doctors of the address.  Indeed, he is free to disclose his address to Veronica in the future if the relationship between the parties improves.  The juvenile court custody order is silent as to all those matters.

While it might lead to better parenting practices for Veronica and Rodolfo to have each other's address, as Veronica contends, refusing to mandate disclosure to Veronica was well within the juvenile court's broad discretion.

## DISPOSITION

The March 5, 2021 juvenile custody order is affirmed.


                                                        PERLUSS, P. J.

We concur:



        SEGAL, J.



        FEUER, J.

9