Filed 7/2/24  In re N.R. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re N.R. et al., Persons Coming Under the Juvenile Court Law. | B329253 <br><br> (Los Angeles County Super. Ct. No. 23CCJP00479) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Petitioner and Respondent, <br><br> v. <br><br> BRANDON N., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore.  Affirmed.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Petitioner and Respondent.

_____

In these dependency proceedings Brandon N. (father) appeals from a juvenile court exit order granting joint physical custody of N.R. to both himself and S.R. (mother), contending no substantial evidence supported the order insofar as it gave mother partial physical custody. We conclude the juvenile court acted within its discretion in awarding mother partial physical custody, and therefore affirm the order.

## BACKGROUND

The facts are undisputed. Mother resided with nine-year-old N.R., his half sibling A.R. (age six), their three half sisters, and H.C., the half sisters' father. H.C. had substance abuse and mental health issues, and physically abused A.R. For most of these proceedings the family lived in motels using housing vouchers, and sometimes lived in a car. The family home was filthy and unsanitary.

On February 7, 2023, the Los Angeles County Department of Children and Family Services (DCFS or the Department) filed a Welfare and Institutions Code section 300 petition alleging H.C.'s substance abuse and physical abuse of A.R. endangered all the children.[1]

The children were detained from mother and H.C. and placed in a foster home. Father's whereabouts were at first

---

[1] Undesignated statutory references will be to the Welfare and Institutions Code.

unknown but he was soon located, after which N.R. was placed with him.

Proceedings as to N.R. progressed quickly. On April 5, 2023, DCFS reported that mother, who appeared to have underlying mental health issues, relied on family members and H.C. to provide housing and transportation. She demonstrated no ability to care for the children or provide a stable living environment, was currently residing in a car with H.C., and had made no progress toward obtaining family housing. She failed to enroll in any case plan-related programs or to attend individual counseling to address care issues, missed two out of six drug tests, and failed to respond to voicemails or appear for housing appointments.

DCFS reported that N.R.'s school attendance record was poor, and he would often arrive at school with dirty clothes and poor hygiene. The Department "remain[ed] concerned [about] the mother's ability to protect the children."

The Department reported that H.C.'s "sobriety and untreated substance usage" remained a concern, and of five weekly ordered drug tests, he failed to appear for one and tested positive for marijuana (but not methamphetamine) on the others.

The Department reported no concerns about father, who had stable employment and a strong family support system, was actively involved with N.R., maintained consistent communication with the Department, and would be assisted with childcare by his mother.

The Department recommended that N.R. be released to father, with family maintenance services, and mother receive individual counseling, a parenting program, weekly random drug testing, and monitored visits with the children.

Three weeks later, on April 27, 2023, DCFS reported it "no longer remained concerned [about] the mother's ability to protect the children." The Department reported that although mother, now five months pregnant, had still not enrolled in counseling or any programs, she weekly tested negative for drugs four times and had secured appropriate housing. H.C. continued to weekly test positive for marijuana but negative for methamphetamine.

The Department recommended that the court grant 100 percent physical custody of N.R. to father, with whom N.R. now resided, with shared legal custody granted to mother. (DCFS made the same recommendation as to A.R. and his father.)

The next day, however, at the disposition hearing on April 28, 2023, DCFS changed its recommendation. Instead of 100 percent physical custody to father with shared legal custody to both parents, the Department requested "joint; basically, 50/50 between the father and the mother," with primary physical custody to father.

N.R.'s counsel also supported joint physical custody, reporting that N.R. wanted to live with both parents.

The court declared the children to be dependents of the court, dismissed jurisdiction as to N.R., and, although her weekly visits with N.R. were still being monitored and she had made no progress in her court-ordered services, found mother's progress on her case plan to be "substantial." It ordered joint legal and physical custody to both parents, with primary physical custody to father.

Father appeals.

## DISCUSSION

Father contends no substantial evidence supports the order granting mother partial physical custody. We disagree.

4

## A. Applicable Law

When "the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child." (§ 362.4, subd. (a).) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; see also *In re Chantal S.* (1996) 13 Cal.4th 196, 206 [in making a custody determination the juvenile court focuses on the best interests of the child].)

"[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case." (*In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 265, fn. 4.) We review a custody (or "exit") order pursuant to section 362.4 for abuse of discretion, and will not disturb the order "unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

## B. Substantial Evidence Supported the Exit Order

Here, the juvenile court granted partial physical custody to mother based on a finding that she had made "substantial" progress in her case plan. That finding was supported by the fact that mother had tested negative for drugs four times and had

secured appropriate housing.  The court therefore acted within its discretion in finding that joint custody would be in N.R.'s best interest.

Father argues mother's other problems mandate a different result:  She had no history of being able to care for her children, engaged in no counseling, enrolled in no programs, missed several drug tests, and continued to reside with H.C., who continued to use marijuana.  (Father sometimes phrases the issue as a lack of "notice," but by that he means only that he was surprised by the Department's change in position on the day of the disposition hearing and by the juvenile court's ultimate conclusion.)

We grant that this evidence would have supported denial of joint physical custody to mother.  But our role on appeal is to determine only whether substantial evidence supported the court's order, i.e., whether the order exceeded the bounds of reason, not whether the ambivalent evidence weighed in favor of a different conclusion.  Here, although substantial evidence suggested that partial physical custody with mother would *not* be in N.R.'s best interest, other evidence—mother's four negative drug tests and her securing appropriate housing—suggested that joint custody was in N.R.'s best interest.  There being evidence on both sides, it was the juvenile court's judgment call to make.

6

## DISPOSITION

The juvenile court's exit order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting, P. J.

WEINGART, J.

7