Filed 4/6/26  In re S.G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re S.G., a Person Coming Under the Juvenile Court Law. | B335255, B339878 |
| | (Los Angeles County Super. Ct. No. 23CCJP02840A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| P.G., | |
| Defendant and Appellant, | |
| J.B., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Davis, Judge. B335255 dismissed as moot; B339878 is affirmed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

California Appellate Project, Jennifer Peabody and Kristie A. Lutz, for Respondent.

No appearance for Plaintiff.

_____

**INTRODUCTION**

This case involves overlapping orders from the juvenile court and the family court relating to minor S.G. (born 2023). Father P.G. (Father) appeals the juvenile court's December 2023 and February 2024 orders regarding visitation and custody of his son S.G., which the court tried to align with restraining orders issued by the family court. He also appeals from the juvenile court's July 2024 orders terminating jurisdiction and issuing custody and visitation orders.

In the first appeal, case number B335255, Father contends temporary and permanent domestic violence restraining orders (DVROs) against him issued by the family court were purportedly void because the juvenile court had exclusive jurisdiction during the family's dependency proceedings. He argues the juvenile court's orders aligning with the family court's restraining orders were erroneous and prejudicial. In the second appeal, case number B339878, Father argues the juvenile court's exit order inappropriately relied on the family court's restraining order, and the juvenile court abused its discretion by ordering joint legal and

2

physical custody with equal parenting time, but with primary physical residence designation to Mother.

Mother J.B. (Mother), as respondent, contends Father's first appeal is moot because the parents now share joint custody of S.G.[1] Mother also argues it was not an abuse of discretion for the juvenile court to designate primary residence to Mother in its exit order.

We agree Father's appeal from the December 2023 and February 2024 orders is moot and dismiss the first appeal. We affirm the juvenile court's order terminating jurisdiction and its exit order.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Dependency Petition and Family Court Restraining Orders*

On August 23, 2023, the Los Angeles Department of Children and Family Services (Department) filed a juvenile court petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[2] alleging S.G. was at risk of serious physical harm due to a history of "violent altercations" and mutual domestic violence between his parents, who were living together at the time in Glendale. S.G. remained released to both parents.

---

[1] The Los Angeles Department of Children and Family Services filed letter briefs in both appeals stating it took no position on Father's appeals.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

The petition was preceded by domestic violence incidents in which each parent alleged the other was the primary aggressor and called law enforcement. Father obtained an emergency protective order against Mother as a result of an incident in July 2023. Mother was arrested in June 2023 and again on September 9, 2023, after altercations between the parents.

On September 27, 2023, while the dependency petition was pending, Mother filed in family court a request for a DVRO protecting her and S.G. from Father and requiring Father to move out. The family court granted Mother a temporary restraining order the same day and ordered Father to move out of the family apartment, but crossed out S.G. as a protected party. The family court attached a child custody and visitation order ordering sole legal and physical custody to Mother, with monitored visitation for Father. On October 1, Father moved to Georgia to live with relatives.

On October 18, the family court held a hearing and granted Mother a permanent DVRO against Father, which included S.G. as a protected party, effective through October 2026. Father attended the permanent restraining order hearing. The family court attached a child custody and visitation order ordering sole legal and physical custody to Mother, with no visitation for Father until further order of the court.

B.    *Dependency Proceedings October 2023 to February 2024*
On October 25, 2023, the juvenile court held the jurisdiction and disposition hearing. The court and counsel noted the existence of the family court permanent restraining order. S.G.'s counsel requested release to Mother, with monitored visitation for Father. Mother's counsel requested release to

4

Mother and for Father's visitation to happen "through a third party" and to "abide by the current restraining order." The Department argued S.G. should be detained from Father and released to Mother, noting there was now a permanent restraining order against Father, but stated "[o]f course, this court is its own trier of fact and independent" with regard to custody and the restraining order.

Father's counsel agreed "this family needs to be separated," but requested S.G. be released to both parents, "with appropriate measures of parents living apart and unannounced home visits, family preservation, and abiding by all appropriate restraining orders." Father's counsel stated Father would "abide by all appropriate restraining orders," but argued the juvenile court "actually . . . has jurisdiction." Father's counsel noted the initial temporary restraining order crossed out S.G. as a protected party, and argued that because the permanent restraining order had no requirement of monitored visits, the court could release S.G. to Father.

The juvenile court sustained the petition as to both parents and ordered S.G. released to both parents. The court stated: "It's clear to me that this is a toxic relationship just as pled in the petition. It sounds like a couple that doesn't need to be together, at least at this stage of their lives. There's lots of domestic violence and just toxicity between the two of them, and I can't tell who is the aggressor." The court ordered the Department "to make a written custody schedule that is aligned with the protective order that is currently in place," "[t]hat doesn't limit Father's ability to make his visitation or custody clear for the

record," and "that makes sense for all parties in light of the home of parents order."[3]

On December 20, 2023, Father moved ex parte in the juvenile court to modify the permanent restraining order to remove S.G. On December 21, Mother's attorney argued the request to change the order was improper because the juvenile court had already ordered compliance with the restraining order. Father's counsel argued, "this is a legal inconsistency that needs to be fixed. ¶ The home of parents order is conflicting with the family law restraining order that Mother filed during this case when family law court does not have jurisdiction. She should have filed it through this court. Regardless, there's no carveout for visitation in the family law order; so Father reasonably cannot see the child under the current circumstances; so we are asking to file a JV-457 in order to fix that inconsistency and remove the minor off of the restraining order." S.G.'s attorney agreed that having no carveout for visitation is "obviously a problem. It needs to be modified." The Department's counsel noted that the Department's recommendation had been release to Mother, and "the court released [to] parents over the Department's objection," but that "[i]f there is an inconsistency, meaning there is no carveout, I would agree that it needs to be addressed so that it can comport with the court order . . ." The court continued the hearing so Mother could be present.

---

[3] Mother appealed from the jurisdiction and disposition orders made on October 25, 2023, in case number B332836. Appointed counsel for Mother filed an opening brief under *In re Phoenix H.* (2009) 47 Cal.4th 835, stating counsel was unable to identify any arguable issues. Mother did not file a supplemental brief, and this Court dismissed the appeal on August 7, 2024.

6

On December 27, 2023, the juvenile court held the continued hearing after an off-the-record discussion with counsel and ordered Father to have monitored visitation in California three times a week for up to three hours per visit, with discretion to the Department to liberalize. The juvenile court reiterated it had directed the Department "to make a schedule for custody and visitation to comport with the protective order," and stated the court believed monitored visitation was "in line with the protective order as was originally contemplated."

On February 14, 2024, the juvenile court held a progress report hearing on Mother's intended move to Florida, at which the parties revisited the issue of the restraining order. The juvenile court stated it understood monitored visitation "doesn't square necessarily with the court's home of parents' order, which suggested Father should not have any restrictions placed upon . . . his visitation." Father's counsel argued the juvenile court had exclusive jurisdiction over custody and visitation under section 213.5 and "should have taken over this restraining order" earlier, and the court's order of monitored visitation for a custodial parent was unlawful under the circumstances. Father's counsel argued that instead of ordering monitored visitation, the "permanent restraining order should have been modified, which this court can do since we have exclusive jurisdiction."

Father's counsel asked again for the court to modify the permanent restraining order, stating: "That's all we're requesting. We're just asking that the child be removed from this PRO in order to comply with the court's home of parents[] order that was made on dispo on 10-25." Father's counsel explained: "I think the issue is, your Honor, the court made a home of parents[] order. That's custody to Mother and Father. They have

7

equal custody rights. . . . A parent who has custody can't have monitored visits. That's removing custody from the parent. Those orders [are] in conflict." Counsel continued, "You just can't limit a parent in that way who has custody. That is essentially a removal." Father's counsel stated that "it makes sense for mom to have primary physical residence" and that Father was just trying to get the law right and work out a custody schedule.

The juvenile court stated it did not have a copy of the permanent restraining order before it and was "still uncertain as to whether the child was ever included" on the final order, because the temporary restraining order had S.G. crossed out as a protected party. The court stated "[i]f there is an error, it is mine," but concluded, "I don't think my home of parents[] order was unlawful. I don't think my monitored visits, in light of the restraining order, was unlawful. I was still trying to keep father with the ability to visit with his children, but in light of the fact that there was the restraining order that included the child—I was all for upholding that order, and I would have made the same order if it were in front of me. That's why I don't believe it is unlawful."

The juvenile court concluded, "I'm going to leave the order intact. I'm not going to modify anything today. Maybe the appellate court will make me do that later." The court authorized Mother to move to Florida and ordered the parents to mediation "to address a custody schedule that is consistent with the existing Permanent Restraining Order."

On February 14, 2024, Father appealed from the juvenile court's orders made on December 27, 2023, and February 14, 2024, specifically stating he appealed the "court's denial to remove child from the restraining order."

8

C.	*Modification of Restraining Order and Visitation, Termination of Jurisdiction and Exit Order*

On February 21, 2024, while Father's first appeal was pending, Father filed a section 388 petition asking the juvenile court to remove S.G. from the restraining order and to vacate the December 27, 2023 "monitored visitation" order.[4] The petition argued the juvenile court made multiple errors of law in violation of the juvenile court's exclusive jurisdiction over custody and restraining orders, including failing to move the restraining order action to the juvenile court, making custody orders subject to the family court restraining order even though the juvenile court orders take precedence, and declining to modify the restraining order to remove S.G.

On March 26, 2024, the juvenile court granted Father's petition and removed S.G. from the DVRO "to comport with [the] Court's Home of Parent-Parents order." The juvenile court also vacated its December 27, 2023 "monitored visitation" order, and it ordered the Department to create a written parenting schedule "in accordance with the modified restraining order."

In April 2024, the juvenile court ordered the parents to alternate one month on, one month off custody periods with S.G. In June 2024, the parties agreed to close the case, and each parent argued for primary custody.

---

[4]	In his first appeal, Father requests that this court take judicial notice of various records relating to the post-appeal proceedings. Because these items are included in the record on his second appeal, which this court has determined may be heard together, we deny Father's request for judicial notice as unnecessary.

In July 2024, the juvenile court terminated jurisdiction with a custody and visitation order (commonly known as an "exit order") granting Mother and Father joint legal and physical custody of S.G., with primary residence designation to Mother. Custody of S.G. was ordered to remain on an equal "one-month on/off schedule," alternating between each parent for a month at a time.

Father timely appealed from the termination of jurisdiction and exit order.

## DISCUSSION

A. *Governing Law and Standard of Review*

The juvenile court has exclusive jurisdiction over custody and visitation for a dependent child until the dependency petition is dismissed or dependency jurisdiction terminated. (*In re Anna T.* (2020) 55 Cal.App.5th 870, 876; see § 304; Cal. Rules of Court, rule 5.620(a).)[5] Section 304 provides in relevant part: "After a petition has been filed . . . , and until the time that the petition is dismissed or dependency is terminated, no other division of any superior court may hear proceedings [under] the Family Code regarding the custody of the child . . . . While the child is under the jurisdiction of the juvenile court all issues regarding his or her custody shall be heard by the juvenile court." Similarly, rule 5.620(a) provides: "Once a petition has been filed [in juvenile court] alleging that a child is described by [a subsection of] section 300, and until the petition is dismissed or

---

[5] Undesignated rule references are to the California Rules of Court.

10

dependency is terminated, the juvenile court has [sole and] exclusive jurisdiction [over matters] relating to the custody of the child and visitation with the child . . . ."  Los Angeles County Superior Court, Local Rules (Local Rules), rule former 8.34(b)(3) accordingly requires the juvenile court to notify family or probate courts with overlapping cases that "all issues regarding custody, including visitation, must be heard by the juvenile court" until the dependency petition has been dismissed or jurisdiction terminated.

      The juvenile court also has exclusive jurisdiction to issue ex parte civil restraining orders and DVROs to protect a dependent child or to "exclude[] a person from the dwelling of the person who has care, custody, and control of the child."  (§ 213.5, subd. (a); see rule 5.630(a)(1) ["The juvenile court has exclusive jurisdiction under section 213.5 to issue [] restraining order[s] to protect the child who is the subject of a petition under section 300 . . ."].)  The juvenile court has additional discretion to issue ex parte civil restraining orders and DVROs to protect "any parent, legal guardian, or current caretaker of the child." (§ 213.5, subds. (a) & (b) [juvenile court "may issue" such orders]; see § 304 ["The juvenile court, on its own motion, may issue an order as provided for in Section 213.5, or as described in Section 6218 of the Family Code"]; rule 5.630(a)(2); see also *In re Lilianna C.* (2024) 99 Cal.App.5th 638, 643-644 ["Under section 213.5, and as pertinent here, a juvenile court has the authority to issue a restraining order lasting up to three years that protects a dependent 'child,' 'any other child in the household,' as well as 'any parent, legal guardian, or current caretaker of the child' "].)

      Former Local Rule 8.34(c)(1) further required that "When a family, dependency, or probate court issues a temporary or

11

permanent restraining order and the restrained person or the protected person is known to have another dependency, family law, or probate guardianship case involving the same children, a copy of the restraining order must be sent to the court with the overlapping case. ¶ When a family law court issues a temporary restraining order for parties known to have an active dependency case, the hearing on the permanent order must be set in the dependency courtroom to which that case is assigned." And, the juvenile court has the authority to modify or terminate a restraining order while the dependency case is open. (Rule 5.630(j).)

"Section 362.4 governs the termination of juvenile court jurisdiction and related orders. The statute authorizes a juvenile court to make 'exit orders' regarding custody and visitation upon terminating dependency jurisdiction over a child. [Citations.] These exit orders remain in effect until modified or terminated by a subsequent order of the superior court." (*In re J.M.* (2023) 89 Cal.App.5th 95, 112; see § 362.4, subds. (a) & (b); see also Cal. Rules of Court, rule 5.700.) In making an exit order, "the court's ' "focus and primary consideration must always be the best interests of the child." ' [Citation.] The juvenile court is not restrained by any preferences or presumptions that ordinarily apply in family court." (*In re Reyna R.* (2026) 118 Cal.App.5th 486, 492-493 (*Reyna R.*).)

We review the juvenile court's exit order for abuse of discretion. (*Reyna R., supra,* 118 Cal.App.5th at p. 493; *In re M.R.* (2017) 7 Cal.App.5th 886, 902.) We will not disturb an exit order " 'unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re N.M.* (2023) 88 Cal.App.5th

12

1090, 1094 (*In re N.M.*); accord, *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

B.      *Father's First Appeal Is Moot*

In his first appeal, Father argues that because the juvenile court had exclusive jurisdiction over custody, visitation, and restraining orders, (1) the juvenile court erred by deferring to and conforming its custody and visitation orders to the family court permanent restraining order without making its own findings, and (2) the permanent restraining order hearing should have been moved to the juvenile court.  Father argues he was prejudiced by the court's erroneous orders.  Mother concedes the juvenile court had exclusive jurisdiction and that the family court's orders were not legally binding on the juvenile court.  But she argues Father's first appeal is moot because the parents now share joint custody of S.G. and no harm is ongoing or redressable.

An appeal "becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276 (*In re D.P.*); accord, *In re Gael C.* (2023) 96 Cal.App.5th 220.)  "For relief to be 'effective,' two requirements must be met.  First, the plaintiff must complain of an ongoing harm.  Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.*, at p. 276.)  " 'As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot.  [Citation.]  However, dismissal for mootness in such circumstances is not automatic, but "must be decided on a case-by-case basis." ' " (*In re T.R.* (2024) 107 Cal.App.5th 206, 214; accord, *In re C.C.* (2009)

13

172 Cal.App.4th 1481, 1488; accord, *In re Rashad D.* (2021) 63 Cal.App.5th 156, 163 (*Rashad D.*).)

Even if a dependency case is moot, "courts may exercise their 'inherent discretion' to reach the merits of the dispute." (*In re D.P., supra,* 14 Cal.5th at p. 282.) "[C]ourts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination.' " (See *id.* at pp. 282, 285-286 [identifying additional relevant factors].)

In his reply brief, "Father concedes that there is no remedy available in that the juvenile court ordered that which he requests on appeal. However, the effects of the initial erroneous error continue to harm him." We conclude that Father's first appeal is moot because in March 2024, while this appeal was pending, the juvenile court modified the restraining order to remove S.G. and vacated its order directing monitored visitation for Father. In doing so, the juvenile court resolved any conflict between the restraining order and the court's disposition order, directing shared custody and release to both parents. Additionally, the juvenile court's July 2024 exit order, giving both parents legal and physical custody of S.G., superseded any interim custody and visitation orders. (See *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165 [juvenile court's "exit order 'determining the custody of, or visitation with, the child' " is " 'a final judgment and shall remain in effect after [the juvenile court's] jurisdiction is terminated' "]; § 302, subd. (d) ["Any custody or visitation order issued by the juvenile court at the time the juvenile court terminates its jurisdiction . . . shall be a

14

final judgment and shall remain in effect after that jurisdiction is terminated"]; see also § 362.4, subd. (b) [custody and visitation orders "continue until modified or terminated by a subsequent order of the superior court"].) Now that dependency jurisdiction is terminated, S.G.'s custody is pursuant to the court's exit order (which we address in the next section), not its interim orders.

This court can no longer provide relief from the juvenile court's decision to order monitored visitation or from its decision to deny modification of the restraining order during earlier stages of the dependency proceedings because those orders are no longer operative and have been superseded by the exit order. "[R]elief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status,' " requiring "some effect on the [appellant's] legal status that is capable of being redressed by a favorable court decision." (*In re D.P., supra,* 14 Cal.5th at p. 277.) Since we cannot provide effective relief to Father from orders that have been vacated or are no longer in effect, Father's first appeal is moot.

Father raises several arguments why the first appeal is not moot. First, he contends the juvenile court's initial errors continue to harm him since the exit order's primary residence designation was based on a restricted custody and visitation history. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 [" 'An issue is not moot if the purported error infects the outcome of subsequent proceedings' "].) He reasons that but for the juvenile court's error, the court might not have issued a restraining order on its own, he would have had a clear joint custody order when he moved out of state, and thus he might otherwise have been given primary residence in the exit order. But the juvenile court expressly said that it "would have made the same order" as the

15

family court if the restraining order "were in front of me," and Father does not explain why the same consequences he identifies would not have followed.

Second, Father argues a DVRO on Father's record could be used against him in future family court proceedings. But "speculative future harm" is insufficient to avoid mootness, as are mere complaints of stigma. (*In re D.P., supra,* 14 Cal.5th at p. 278.) Only "when a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal" is a case moot. (*Id.* at p. 283.) And "stigma must be paired with some effect on the plaintiff's legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277.) The impact of the DVRO on future dependency proceedings is speculative and uncertain on this record because Father does not challenge the underlying jurisdiction findings. As stated, the juvenile court sustained allegations of domestic violence by both parents. Father may explain to the court in any future proceedings that the record in this case includes findings of mutual domestic violence, that Father received an emergency protective order against Mother, and that Mother was arrested twice for spousal battery. Further, the mere existence of a DVRO as to Mother and which does not include S.G. is not "particularly pernicious or stigmatizing." (*Id.* at pp. 285-286.)

Third, Father urges us to exercise our discretion to reach the merits of his first appeal even if we find the issue moot, as an injury capable of repetition yet evading review. "Courts also have discretion to resolve appeals that are technically moot if they present important questions affecting the public interest that are capable of repetition yet evade review." (*In re Damian L.* (2023) 90 Cal.App.5th 357, 369; see *In re D.P., supra,* 14 Cal.5th at

16

p. 282 ["As a rule, courts will generally exercise their discretion to review a moot case when 'the case presents an issue of broad public interest that is likely to recur,' 'when there may be a recurrence of the controversy between the parties,' or 'when a material question remains for the court's determination' "].) Here, Father does not identify any public interest, and we conclude this case presents a "highly fact-specific question" that has been resolved, rather than an issue of broad public importance. (*Rashad D., supra,* 63 Cal.App.5th at p. 159.) It is also unlikely this controversy will recur as between these parties, given the juvenile court's March 2024 modification of the restraining order and visitation order.

Accordingly, we dismiss the appeal in B335255 as moot.

C. *The Juvenile Court Did Not Abuse Its Discretion by Designating Mother's Residence as S.G.'s Primary Residence in the Exit Order*

We now examine Father's appeal of the exit order, which granted Mother and Father joint legal and physical custody of S.G. and primary residence designation to Mother, with an equal "one-month on/off schedule," alternating between each parent. Father does not challenge the termination of jurisdiction or the custody and visitation schedule. His sole argument is that the juvenile court's initial deference to the family court restraining order prejudiced him when it issued its exit order because the court designated Mother's residence as S.G.'s primary residence.

But by the time the court issued its exit order in July 2024, the juvenile court had already modified (at Father's request) its December 27, 2023 visitation order and the permanent restraining order, and these orders were not the basis for the

17

court's exit order.  As stated, in March 2024, the juvenile court removed S.G. from the restraining order and vacated the December 27 order that required monitored visitation for Father.

Accordingly, when the dependency court terminated jurisdiction, Father had the benefit of joint custody for several months, without visitation restrictions or a restraining order involving S.G.  And, since April 2024, Father had a court-ordered equal time custody schedule, with S.G. alternating monthly between Father in Georgia and Mother in Florida.  The exit order was thus based on the custody orders and schedule in effect since April 2024, not on the prior interim orders.

Father argues the juvenile court's order of primary residence designation to Mother may prevent him from accessing S.G., due to his repeated difficulties coordinating his parenting time with Mother.  But based on the record before us, we cannot say the court's decision to designate primary residence to Mother was arbitrary, capricious, or patently absurd.  At the time of the exit order, Department reports showed both parents had a lack of progress in their case plans but Mother had engaged in more court-ordered services than Father (including seven anger management classes and some individual counseling).  Father had attended one domestic violence batterer's intervention class in March 2024.  Mother also was seeking to enroll S.G. in school. " '[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case,' " (*In re N.M., supra,* 88 Cal.App.5th at p. 1094) and " ' " '[t]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' "

18

(*Ibid.*)  Father has not shown the decision was arbitrary or capricious.

Although we affirm the juvenile court's exit order, we note that Father is not without a remedy.  Under section 302, subdivision (d), he may seek modification of the exit order in family court if he can "demonstrate 'there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child.' " (*Rashad D., supra,* 63 Cal.App.5th at p. 165, fn. 7.)

## DISPOSITION

Father's appeal from the juvenile court's orders on December 27, 2023, and February 14, 2024, is dismissed as moot. The exit orders of the juvenile court are affirmed.

MARTINEZ, P. J.

We concur:


SEGAL, J.


STONE, J.

19